## SUBSEQUENT INJURY FUND *v.* KATHERINE E. CHAPMAN, Widow of Henry Bernard Chapman, Deceased

[No. 293, September Term, 1970.]

*Decided March 10, 1971.*

The cause was argued before MURPHY, C.J., and ANDERSON and THOMPSON, JJ.

*Albert A. Levin,* with whom was *William H. Kable* on the brief, for appellant.

*Maurice J. Pressman,* with whom was *David M. Brenner* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

This appeal in a Workmen's Compensation case presents the question whether an award for permanent total disability payable out of the Subsequent Injury Fund survives to a widow upon the death of her claimant husband from a cause not related to the accident which caused the total disability.

The pertinent facts are these: A jury in the Court of Common Pleas of Baltimore City found that Henry Chapman, the deceased husband of Katherine Chapman, was permanently and totally disabled as a result of the combined effects of a pre-existing condition and a subsequent accidental injury sustained by him on May 4, 1967. The jury found that 35% of the permanent total disability was due to the accidental injury of May 4, 1967 and that 65% of the disability was due to a previous accident or disease in 1957. The case was remanded to the Workmen's Compensation Commission for the passage of an order in conformity with the jury's verdict and the judgment of the court. On March 17, 1970, the Commis-

sion passed an award of compensation "not [to] exceed the sum of $30,000.00 [1] in accordance with [Maryland Code] Section 36, Subsection 1, of Article 101," directing that the employer and insurer "shall pay the sum of $10,500.00 representing the compensation payable for 35% of the claimant's permanent total disability, and the balance, the sum of $19,500.00 representing the compensation payable for 65% of the claimant's permanent total disability due to a pre-existing condition, shall *not* be payable from the Subsequent Injury Fund." The Commission stated in its order that "there is no right of survivorship of permanent total disability benefits under Article 101, Section 66, Subsection 1," but that "the rights of survivorship that exist are under Section 36, Subsection 1, and do not apply to Subsequent Injury Fund awards." Mrs. Chapman appealed from that part of the Commission's decision precluding recovery of compensation from the Fund. The court (*Sodaro, J.*) reversed the Commission's decision. It held that awards payable out of the Fund survive to a widow upon the death of her husband from a cause not related to the accident which caused the total disability; and that Mrs. Chapman should receive from the Fund the sum of $19,500.00 for the 65% due to her deceased husband's prior disability, subject to a credit of $9,075.00, the dollars actually awarded to her husband for his previous 1957 disability, or a net sum of $10,425.00. The Subsequent Injury Fund appealed from this determination.

We recently reviewed the statutory and judicial history of the Subsequent Injury Fund in *Subsequent Injury Fund v. Howes*, 11 Md. App. 325. We there noted that the statutory precursor of the Subsequent Injury Fund— the Second Injury Fund—was created by Chapter 637 of the Acts of 1945. That Act, later codified within the "Workmen's Compensation" article of the Maryland Code as Section 66 of Article 101, provided that where

---

1. The maximum payment for permanent total disability under the then prevailing law.

an employee, who had previously lost, or lost the use of a hand, arm, foot, leg or eye, lost another of those members or organs in a compensable accidental injury and thereby became permanently and totally disabled, the employee was entitled to receive additional compensation, beyond that payable by the employer for the current injury, such additional compensation to be paid, upon the written order of the Workmen's Compensation Commission, from a special fund known as the Second Injury Fund, funded by assessments imposed upon employers and insurers. It was the express intent of the law creating the Second Injury Fund "to make the total payments to which such employee shall become entitled equal to the compensation that would be due for permanent total disability." [2]

By Chapter 809 of the Acts of 1963, Section 66 of Article 101 was repealed and re-enacted, with amendments. One of the amendments to Section 66 abolished the Second Injury Fund and created, in its place, the Subsequent Injury Fund. As amended by the 1963 Act, Section 66 accomplished a major broadening of the original concept of the Second Injury Fund. It provided for payments of additional compensation from the Fund to an injured employee who sustained any injury in a compensable accident while previously suffering any kind of permanent impairment due to a previous accident or a disease or any congenital condition, provided that the end result was permanent total disability or permanent partial disability exceeding 50% of the body as a whole. It was the express intent of the Act creating the Subsequent Injury Fund "to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability."

---

2. In simple terms, the employer was liable only for the compensation payable for the current injury; the Fund was obligated to pay the rest.

In analyzing the Subsequent Injury Fund, the Court of Appeals, in *Subsequent Injury Fund v. Pack,* 250 Md. 306, 308, said: "Its purpose was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, coupled with previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries. By the terms of the statute, if the employee sustained a subsequent compensable disability, but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance carrier would only be liable for compensation payable by reason of the subsequent injury. The Subsequent Injury Fund, funded by assessments imposed upon employers and insurers, by statute, would contribute the balance of the total award, so that the sum of the two payments would equal the compensation provided by statute for the combined effects of both the previous disability and the subsequent injury."

The 1963 Act (Section 66) provided that the Subsequent Injury Fund was to assume the defense and payment of all claims made against the Second Injury Fund "for injuries which arose prior to June 1, 1963." It was also provided, in Section 2 of the Act, that its "provisions * * * shall only be construed prospectively and shall not be applied or interpreted to have any retrospective effect." The Act took effect June 1, 1963.

Neither the 1945 Act creating the Second Injury Fund nor the 1963 Act creating the Subsequent Injury Fund contained any provision for survivorship of the unpaid part of an award made against the Fund where the injured employee died from a cause not related to the accident which caused the total disability. It is because of

the absence of any such survivorship provision that the claim is made, on behalf of the Fund, that the Legislature never intended to create any right of survivorship of awards made against the Fund; and that, consequently, the court below was in error in directing payment to Mrs. Chapman of the unpaid part of her deceased husband's award. In support of this position it is argued that the Subsequent Injury Fund law was passed primarily for the benefit of the handicapped worker, so that if death ensues from a cause unrelated to his accidental injury he is no longer in the labor market and his claim expires with him. The Fund claims that as Chapman was previously paid for his 1957 injury, there is no reason to pay again for the same injury and disability.[3] In this connection, it is urged that as Section 2 of the 1963 Act requires that it be construed only prospectively, and not given any retrospective effect, it would run counter to the plain language and meaning of the Act to require the Fund to pay any part of the $19,500.00 award attributable to the 1957 injury. We find no merit in any of these arguments.

It is expressly provided in another Section of the Workmen's Compensation Law—Maryland Code, Article 101, Section 36, Subsections (1) (c) and (4) (c), respectively, that if an employee to whom any award of permanent total or permanent partial disability has been made dies from a non-compensable cause "the right to any compensation payable under this Subsection, unpaid at the date of his death, shall survive to his surviving dependents * * *." That Section 66 of Article 101 dealing with the Subsequent Injury Fund does not itself contain a survivorship provision, or by express language incorporate the survivorship provisions of Section 36, does not necessarily compel the conclusion that

---

3. The record indicates that as a result of his 1957 injury, Chapman received a 60% permanent partial disability award under the "other cases" provisions of the Workmen's Compensation Law, and a 25% permanent partial disability award for loss of use of his right leg.

Fund awards die with the injured employee, as claimed by the Fund. The cardinal rule of statutory construction is that courts should ascertain the legislative intention and place that intent into effect. *Domain v. Bosley,* 242 Md. 1; *Zebron v. American Oil Co.,* 10 Md. App. 308. Statutes which relate to the same thing or general subject matter, and which are not inconsistent with each other are in *pari materia,* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other. *May v. Warnick,* 227 Md. 77; *Domain v. Bosley, supra; Welsh v. Kuntz,* 196 Md. 86; *Pressman v. Elgin,* 187 Md. 446. Consistent with this established rule of statutory construction, we think all Sections of the Workmen's Compensation Law (Article 101) must be read and considered together in arriving at the true intent of the Legislature, as they form part of a general system; indeed, the rule has been applied by the Court of Appeals in interpreting the Motor Vehicle Code (Article 66½), *May v. Warnick, supra;* the Retail Sales Tax Act (Article 81), *Comptroller v. Atlas General Industries,* 234 Md. 77; the Defective Delinquent Law (Article 31B), *Height v. State,* 225 Md. 251; and the Alcohol Beverages Code (Article 2B), *State v. Petrushansky,* 183 Md. 67.

Considering the question presented in this case in light of these principles, we think the survivorship provisions of Section 36 (1) (c) and (4) (c) of the Workmen's Compensation Law apply to awards made against the Subsequent Injury Fund under Section 66. There are no provisions in Section 66 by which to determine the amount, manner, or method of paying benefits for permanent total or permanent partial awards made against the Fund; these matters can be determined only by reference to the provisions of Section 36, and the schedules therein contained, setting forth the formula to be followed in calculating the amounts of awards due injured employees for

permanent total or permanent partial disabilities. It is thus readily apparent that the provisions of Sections 36 and 66 must be read together, and when this is done we find no valid reason to conclude that the Legislature intended the survivorship provisions of Section 36 to be inapplicable to awards made against the Fund under Section 66.[4] In so holding, we are mindful of the rule that where there is ambiguity in the compensation law the uncertainty should be resolved in favor of the claimant. *See Barnes v. Ezrine Tire Co.*, 249 Md. 557, 561.

Under Section 66 the compensation to be received from the Fund by Chapman's widow takes into account, and is calculated solely with reference to, the permanent disability produced by reason of the combined effect of the previous impairment and subsequent injury. By providing that the provisions of the 1963 Act (Section 66) "shall only be construed prospectively and shall not be applied or interpreted to have any retrospective effect," we think it the manifest intention of the Legislature that the "provisions" of Section 66 may if applicable be applied in any case involving, as here, a subsequent compensable injury sustained after June 1, 1963—the statute's effective date. *Compare Richard F. Kline, Inc. v. Grosh*, 245 Md. 236, and *Zebron v. American Oil Co., supra.*

The Fund next claims that even if awards made against it do survive the death of the injured employee, it is nonetheless entitled to a percentage credit representing 65% of Chapman's permanent total disability which the jury found attributable to his previous impairment in 1957. The Fund relies upon the language of Section 66(5), *viz.,*

---

4. In *Furley v. Warren-Ehret Co.*, 195 Md. 339, relied upon by the Fund, provision was expressly made in what is now Section 36 for survival of an award for permanent partial disability, but no such provision was included within the same Section, at that time, for survival of permanent total disability awards. The court, construing the Section as a whole, found that in view of the inclusion of survivorship rights to permanent partial disability benefits, and the absence of such a provision for permanent total disability, no survivorship rights could be claimed in connection with the latter. The case is not applicable to the facts in the present case.

"* * * In making any award from the Fund for a subsequent injury, the Commission shall consider any prior award made by the Commission, or by a similar commission in any other state or in the District of Columbia, in determining the amount to be awarded for such subsequent injury. * * *"

As 65% of the $30,000 maximum payment for permanent total disability under the then prevailing law amounts to $19,500, the Fund claims a credit for this full amount, and urges that Mrs. Chapman is entitled to no payment from it.

It appears from the record that the disability suffered by Chapman in 1957 resulted in permanent partial awards of compensation totalling $9,075.00, which were paid to him in 1959 and 1960.[5] Mrs. Chapman agrees that the Fund may be entitled to a credit on account of the prior awards, but contends that it is a *dollar* credit ($9,075), as found by the lower court, and not a percentage credit (65% of $30,000 or $19,500), as claimed by the Fund.

As heretofore indicated — subject to consideration by the Commission of prior *awards* made for permanent disability—it is the intent of Section 66 "to make the total payments to which * * * [the] employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability * * *." To best effectuate this legislative intent we think the proper credit to be given the Fund in this case can only be measured in terms of dollars, and not by percentage of disability. Chapman's subsequent injury in 1967 resulted in a permanent total disability, the maximum payment for which was $30,000. The total amount

5. Chapman was given a 60% permanent partial disability award under the "other cases" provisions of the Workmen's Compensation Law for a throat condition which amounted to $7,500.00; and a 25% permanent partial disability award for his right leg, amounting to $1,575.00.

of the prior permanent partial awards, $9,075, did not compensate Chapman for 65% of his permanent total disability found by the jury to be attributable to the 1957 impairment. Only $19,500, offset by the $9,075 previously paid on account of the 1957 impairment, would accomplish this end. To so conclude is not to authorize payment twice for the same disability. Chapman was never previously paid an amount equal to 65% of his permanent total disability; he was paid an amount for permanent partial disability, and this amount, in dollars, was credited against the amount of the permanent total disability award which the Fund under Section 66 is obligated to pay. We thus conclude that the lower court was correct in determining that the Fund's liability to Mrs. Chapman amounts to a net sum of $10,425.00.

*Judgment affirmed; appellant to pay costs.*