# MARCO FERRETTO *v.* SUBSEQUENT INJURY FUND
## ET AL.

[No. 621, September Term, 1982.]

*Decided January 10, 1983.*

The cause was argued before MORTON, ADKINS and ALPERT, JJ.

*Jeffrey I. Goldman,* with whom were *Spector, Lembach & Pettit* on the brief, for appellant.

*Sophia L. Swope, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellees.

ADKINS, J., delivered the opinion of the Court.

On April 9, 1980, the Workmen's Compensation Commission passed a Supplemental Award of Compensation holding that appellant Marco Ferretto had sustained a permanent partial disability to his back under "other cases" (Code, Art. 101, § 36 (4) and (4a)) amounting to 85 percent industrial loss of his body (567 weeks). Of this disability, the Commission attributed 50 percent (333 weeks) to an accidental injury Ferretto had sustained on December 16, 1977. The remaining 35 percent (234 weeks) was attributed to a pre-existing impairment. The Commission ordered the employer/insurer to pay Ferretto $41,625 and appellee, the Subsequent Injury Fund, to pay him $29,250. Both awards were to be paid at the "serious disability" rate prescribed by Art. 101, § 36 (4a), as opposed to the "straight" rate provided by § 36 (4) (a).

All parties appealed to the Baltimore City Court, but the appeals of Ferretto and the employer/insurer were voluntarily dismissed. Thus, the sole issue before the Baltimore City Court was whether the Subsequent Injury Fund should be required to compensate Ferretto for the pre-existing impairment component of his 85 percent loss of industrial use at the "serious disability" rate or at the "straight" rate. That is also the sole issue on this appeal. Judge Allen, reversing the Commission, decided in favor of the "straight" rate. We agree, and affirm.

This case involves the interplay between Art. 101, §§ 36 (4a) and 66 (1). The latter, which controls the Subsequent Injury Fund, represents a concept originally enacted in this State by Ch. 637, Acts of 1945, and adopted substantially in its present form by Ch. 809, Acts of 1963. *See Subsequent Injury Fund v. Howes,* 11 Md. App. 325, 329-331, 274 A.2d 131, 133-134 (1971). The portion relevant to this case provides:

> Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the "Subsequent Injury Fund", created

for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.

The purpose of § 66 (1) is

to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously disabled or injured individual sustained an accidental injury, although not of itself disabling, but which, coupled with the previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries. By the terms of the statute, if the employee sustains a subsequent compensable disability, but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance company would only be liable for the compensation payable by reason of the subsequent injury. The Subsequent Injury Fund, funded by assessments imposed upon employers and insurers by statute, would contribute the balance of the total award, so that the sum of the two payments would equal the compensation provided by statute for the combined effects of both the previous disability and the subsequent injury. *Subsequent Injury Fund v. Pack,* 250 Md. 306, 308, 242 A.2d 506, 508 (1968).

Section 36 (4a) was initially adopted by Ch. 322, Acts of 1965. It provides:

A person who, from one accident, receives an award

of compensation for a period of [250] weeks or more under subsection (3) or (4) or a combination of both, is thereby considered to have a serious disability. . . . The weeks for such award shall be increased by one third . . ., and the compensation shall be for sixty-six and two-thirds per centum of the average weekly wage. . . .

This section stands in contrast to the "straight" rate provisions of § 36 (4), which call for compensation, in the case of permanent partial disability "other than those specifically enumerated . . . in subsection (3) . . . in such proportion as the determined loss bears to 500 weeks, the said compensation to be paid weekly at the rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed thirty-three and one-third percentum of the State average weekly wage. . . ." Its purpose, as expressed in the title of Ch. 322 is to "create certain new categories of persons having a serious disability" and to provide enhanced compensation with respect to them.

Neither § 66 (1) nor § 36 (4a) refers expressly to the other. We recognized in *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 375-376, 274 A.2d 870, 873-874 (1981), *aff'd per curiam,* 262 Md. 367, 277 A.2d 444 (1971) that:

There are no provisions in Section 66 by which to determine the amount, manner, or method of paying benefits for permanent total or permanent partial awards made against the Fund; these matters can be determined only by reference to the provisions of Section 36, and the schedules therein contained, setting forth the formula to be followed in calculating the amounts of awards due injured employees for permanent total or permanent partial disability. It is thus readily apparent that the provisions of Sections 36 and 66 must be read together. . . .

When this is done, argues Ferretto, it is apparent that the Workmen's Compensation Commission was correct in

awarding him compensation at the "serious disability" rate for the disability produced by both the 1977 accident and the pre-existing impairment. Only such a construction of the law, he says, will gratify the § 66 (1) language which entitles the employee to compensation "equal to the compensation that would be due for the combined effects of the impairment and subsequent injury...." The Fund strongly contests application of that rate to the 234 week award for the pre-existing impairment.

Our duty in resolving this dispute is to ascertain and effectuate the legislative intent. *Subsequent Injury Fund v. Chapman, supra.* We have ample guidance as to how we should proceed to do so. A statute is to be read, when possible, so that all of its provisions are given effect, *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 444 A.2d 1024 (1982). Statutes relating to the same subject matter should be construed together and harmonized, even when they have been passed at different times and contain no reference to each other, *Subsequent Injury Fund v. Chapman, supra.* More specifically, "the Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant." *Howard County Assn. for Retarded Citizens v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980). Moreover, "[t]he rule that statutes in derogation of the common law are to be strictly construed ... have no application to this article [the Workmen's Compensation Act]; but this article should be so interpreted and construed as to effectuate its general purpose"; Art. 101, § 63.

We have, however, sparse judicial guidance on the specific issue involved in this case. The parties have cited no reported Maryland appellate decisions directly in point.[1] Ferretto claims that the benefits awarded in *Subsequent Injury Fund v. Pack* and *Subsequent Injury Fund v. Howes,*

---

1. In flagrant violation of Md. Rule 1092, the Fund has cited an unreported opinion of this court, in an unrelated case. We have given that opinion no consideration in reaching our decision in this case.

both *supra,* were computed by the Workmen's Compensation Commission to award "serious disability" benefits consistent with his theory. But in neither case was the issue on appeal "serious disability" rate vs. "straight" rate. In the former, the sole issue was whether the Subsequent Injury Fund was authorized to appeal from a decision of the Workmen's Compensation Commission. The latter involved the question of whether the Fund was entitled to representation at all stages of the proceedings.

*Subsequent Injury Fund v. Chapman, supra,* is little more helpful. That case did hold that certain survivorship benefit provisions of § 36 were applicable to the Fund and, as noted above, commented on the relationship between §§ 66 and 36. But after that decision the legislature promptly amended the law to provide that the survivorship provisions of § 36 (1) (d) and (4) (c) do not apply to awards against the Fund under § 66, thereby demonstrating an intention to narrow the judicial construction of § 66.[2] *See Duckworth v. Kelly Springfield Tire Company, infra,* at 354, 353 A.2d at 5.

Three cases have been decided, however, which deal with the issue of aggregating claims in order to qualify a claimant for serious disability compensation, and taken together they demonstrate a clear legislative intent and pattern of judicial construction against such a practice. The first such case is *Barnes v. Ezrine Tire Company,* 249 Md. 557, 241 A.2d 392 (1968). In that case, an employee received multiple injuries as a result of an accident which arose out of and in the course of his employment. Under the law then in effect,[3] one of the injuries sustained qualified under § 36 (3a) as a "serious disability", and the claimant was entitled to enhanced compensation, but two other injuries, falling under the "other cases" category, were not sufficiently disabling to qualify as "serious disabilities", under § 36 (4a). But, the

---

2. Ch. 638, Acts of 1975.

3. Chapter 322, Acts of 1965, codified under Art. 101, § 36. Section 36 (3) provided for a schedule of compensation for enumerated injuries, § 36 (3a) provided for serious disability compensation for those enumerated injuries, § 36 (4) provided for compensation for other cases not enumerated in § 36 (3), and § 36 (4a) provided for serious disability compensation in other cases.

Workmen's Compensation Commission combined the §§ 36 (3) and 36 (4) injuries, so that the entire accident qualified under both §§ 36 (3a) and 36 (4a) as a "serious disability", and awarded the claimant compensation beyond what he would have received without this aggregation. When the employer and insurer appealed this formulation, the claimant made an argument similar to that appearing in the instant case, relying on the resolution of any ambiguity in the favor of a claimant. But the Court of Appeals found no such ambiguity, and held that by creating separate categories for serious disability for enumerated and other cases, the legislative intent was to divide these categories of injury for purposes of determining enhanced "serious disability" compensation. Therefore, the claimant was entitled to enhanced compensation only for the enumerated injury, and not for the other cases.

The next case to deal with aggregation is *Zebron v. American Oil Company,* 10 Md. App. 308, 270 A.2d 339 (1970). The applicable law was still that enacted by Ch. 322, Acts of 1965, and specifically involved Art. 101, § 36 (4a). The appellant had been injured in two separate accidents, one occurring before the effective date of Ch. 322, and the other occurring afterwards. Both cases were heard at the same time, and it was determined that the net result of these accidents was a 70 percent industrial loss of use of his body, only 30 percent of which was due to the subsequent accident — the 40 percent balance was attributable in part to the previous accident and in part to a pre-existing condition, which antedated both accidents.[4] Nonetheless, the Workmen's Compensation Commission awarded the claimant "serious disability" compensation, although the law at that time required that an accident (1) occur after the effective date of the act, and (2) render the claimant at least 40 percent disabled. On American's appeal to the Superior Court of Baltimore City, the award was reduced because the

---

4. While this pre-existing condition would lead one to believe that Art. 101, § 66 (1) was also applicable to this case, there is no mention of it in the decision of the court.

accident which reached the "serious disability" threshold occurred before the effective date, and the accident occurring after the effective date did not reach the "serious disability" threshold. On appeal to this court Zebron argued that the award, which combined both the pre-effective-date and post-effective-date accident, exceeded the threshold amount, and so qualified his injury as a "serious disability". But this court noted the obvious legislative intent to avoid retrospective application of Ch. 322 and found no ambiguity in § 36 (4a) that required resolution in favor of the claimant.

The final case in this trilogy is *Duckworth v. Kelly Springfield Tire Company,* 30 Md. App. 348, 353 A.2d 1, *aff'd per curiam,* 278 Md. 361, 363 A.2d 965 (1976). While dealing with the same basic portion of Art. 101 as the previous two cases, *Duckworth* involved those changes effected by Ch. 446, Acts of 1970. Apparently indicating a legislative response to *Barnes v. Ezrine Tire Company, supra,*[5] the "serious disability" provisions previously codified as §§ 36 (3a) and 36 (4a) were combined into a single § 36 (4a), and that provision was made applicable to injuries either enumerated by § 36 (3) or falling into the other cases category of § 36 (4), arising "from one accident".

Duckworth was injured while at work, and the Workmen's Compensation Commission found that the injury caused a 52 percent permanent partial disability, compensable under Art. 101. The Commission attributed 42 percent industrial loss to the accidental injury and the balance of 10 percent to a previous impairment. The combination resulting in a 52 percent loss of industrial use translated into 260 weeks of compensation for the claimant, which exceeded the requisite 250 weeks in order to qualify for "serious disability" compensation, under § 36 (4a), but the 42 percent loss of industrial use alone fell short of 250 weeks of compensation. As a result, the Commission ordered compensation to be

---

5. See letter of Thomas E. Cinnamond, Esq., to Governor Mandel, February 17, 1970, commenting on the Tenth Report of the Governor's Commission to Study Maryland Workmen's Compensation Laws; Governor's Commission to Study Workmen's Compensation Laws Reports, 1956-1977. Mr. Cinnamond was a member of that Commission.

apportioned between the employer and insurer, for the 42 percent loss, and the Subsequent Injury Fund, for the 10 percent loss, both at the "straight rate" of compensation under § 36 (4), rather than the enhanced "serious disability" rate of § 36 (4a). A Commission rehearing and appeal to the Circuit Court of Allegany County resulted in no change. On appeal to this court, Duckworth argued that the legislative intent of § 66 (1) required that the losses resulting from the previous impairment and subsequent injury be combined when considering eligibility for "serious disability" compensation, which would have resulted in a one-third increase in his total award. That argument was premised on the legislative intent of § 66 (1), that claimants should receive total payments equal to the compensation which would be due for the combined effects of the impairment and the subsequent injury.

We disagreed as to this interpretation of legislative intent. First, we noted that the legislative intent of § 66 (1) pre-dated that of the serious disability benefits under Art. 101, and that the prevailing intent in enactments subsequent to § 66 (1) was to narrow the benefits offered by the Subsequent Injury Fund. Next, we noted that the changes in the serious disability scheme militated against combining disabilities that were not a result of "one accident". Finally, we pointed out that a previous judicial incorporation of § 36 into § 66 (1), under *Subsequent Injury Fund v. Chapman, supra,* was overridden by the legislature in Ch. 638, Acts of 1975. We concluded as follows:

> Under these circumstances, we are persuaded that notwithstanding the declaration of legislative intent found in Art. 101, § 66 (1), a claimant may not add an award of compensation for a previous impairment to an award of compensation for a subsequent injury to qualify for serious disability benefits under Art. 101, § 36 (4a). A claimant is entitled to "serious disability" benefits only when the award of compensation for a subsequent accidental injury alone equals or exceeds 250 weeks. *Id.* at 355-356, 353 A.2d at 5.

In the instant case, the compensation awarded for the accidental injury was for 333 weeks, and so exceeded 250 weeks. It is true that if Ferretto's 85 percent entire disability had been caused by the 1977 accident alone, he would be entitled to compensation at the "serious disability" rate, and thus to more money than he received under Judge Allen's decision. But that would also have been true in *Duckworth*. There, the argument was that the "combined effects" of the accidental injury and the pre-existing impairment produced an overall disability of 52 percent, which should have been paid for at the "serious disability" rate, even though neither segment alone would justify that treatment. We see no reason to read the "combined effects" language of § 66 (1) differently here than we did there.

That the policy and clear intent of the Workmen's Compensation Law do not require the "serious disability" rate to be applied both to the accidental injury portion of the award and the pre-existing impairment portion, where only the former exceeds 250 weeks, is evident when §§ 66 (1) and 36 (4a) are read together.

Under § 66 (1) "the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury." Section 66 (1) in effect defines "such injury" as "a subsequent disability by reason of a personal injury, for which compensation is required by this article. . . ." In this case, "such injury" occurred in December, 1977.

The compensation rate payable because of that injury is prescribed by § 36 (4a) because Ferretto is a "person who, from one accident, receive[d] an award of compensation for a period of [250] weeks or more under" subsection (4). The critical phrase here is "from one accident", which was added to § 36 (4a) by Ch. 446, Acts of 1970, thereby limiting the scope of that section, *Duckworth, supra.* We think it clear that the insertion of "from one accident" evidences a legislative intent that the compensation to be awarded because of the accidental injury, and hence the rate that applies, is dependent upon the seriousness of that injury

alone.[6] Since we find no ambiguity here, we are not required to resolve this question in favor of the claimant. *Barnes v. Ezrine Tire Co., supra.*

Therefore, each portion of the award is to be treated according to the degree of seriousness generated by the disability to which that portion relates. This construction of the statute is consistent with "the intent of [§ 66 (1)] to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury. . . ."

This construction is also consistent with the policy that the Subsequent Injury Fund should be required to pay compensation based on the pre-existing impairment only. Section 66 (1) manifests no intention to require the Fund to pay for prior impairment disability at a higher rate merely because a later injury "from one accident" is compensable as a "serious disability". Thus, we hold that Ferretto is not entitled to be compensated at the "serious disability" rate for the portion of the award (35 percent loss of industrial use) allocated to the pre-existing impairment unless that loss alone meets the requirements of § 36 (4a).

> *Judgment affirmed.*
> *Appellant to pay the costs.*

---

**6.** The 1970 legislation overrode the holding of Barnes v. Ezrine, supra, to the effect that the Workmen's Compensation Commission could not aggregate injuries to different parts of the body, received in one accident, in order to award compensation at the "serious disability" rate; see pp. 6-7, supra, and n. 5 and accompanying test. That legislation showed no intent to allow the aggregation of accidental injury and prior impairment disabilities for such purpose. Indeed, a contrary intent must be inferred from the legislature's insertion of the "from one accident language" in one context while not dealing with the other.