493 A.2d 431

**LUCKY STORES, INC., et al.**

v.

**Charles W. STREET, III.**

**No. 1464, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 12, 1985.

Thomas J. Davis, Rockville (Karceski & Wochok, Rockville, on brief), for appellants, Lucky Stores, Inc., and Travelers Ins. Co.

Sherrie L. Krauser, Associate County Atty., Upper Marlboro (Thomas P. Smith, County Atty. and Michael O. Connaughton, Deputy County Atty., Upper Marlboro, on brief), for appellee, Prince George's County.

John J. Temple, Upper Marlboro, for appellee.

Argued before WEANT, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

In this appeal we must decide whether under the Worker's Compensation Law a disability resulting from *both* an occupational disease and an accidental injury may be combined so as to constitute "a serious disability" under art. 101 § 36(4a). Put another way, can the combination of a heart attack and pre-existing atherosclerosis be legally the result of "one accident"? We think not.

Appellee, Charles W. Street, III, suffered a heart attack after chasing and apprehending a shoplifting suspect at Lucky Stores on December 14, 1978. At the time, Street was employed full time as a Prince George's County police officer and part-time (20–25 hours per week) as a security guard for Lucky Stores. Prince George's County permitted and encouraged their officers to accept such employment. Pursuant to a claim for Worker's Compensation, Street testified before the Commission that he experienced pains in his chest and left arm after apprehending the suspect. He made the arrest in his capacity as a police officer and then returned to the store floor and finished his shift. Street

then went home but still did not feel well and, accordingly, drove himself to the hospital. He was admitted to the coronary care unit for a period of ten days and readmitted three months later after experiencing additional chest pains.

Street never returned to his job as a police officer or as a security guard following the incident. He retired from the police force after a six month sick leave and is currently employed as a bartender.

Street initially filed a worker's compensation action (Claim # A791606) against Prince George's County on June 15, 1980, based on the statutory presumption that his heart attack was an occupational disease. Testimony was taken before the Medical Board on December 2, 1980. Prior to any decision in that case, Street filed an additional claim against Lucky Stores and its insurer (Travelers) alleging that the heart attack was an accidental injury.

The Medical Board issued its finding of no occupational disease on April 29, 1981, finding that "the claimant ha[d] coronary artherosclerosis which is not considered to be an occupational disease." The Board took note of Street's family history of heart disease and his 1½–2 packs of cigarettes per day habit.

A hearing was held before the Commission on December 9, 1983, during which the accidental injury claim was heard for the first time and the Medical Board's decision was reviewed. Street again testified that he was employed by Lucky Stores on the date of the incident but acted in the capacity of a police officer when making the actual arrest. Street testified that he chased the suspect approximately 150 feet and that only one of ten arrests (per year) involved a chase.

The Commission issued its award on January 11, 1984, and reversed the decision of the Medical Board, *i.e.*, found that Street had suffered an occupational disease. Both employers were held jointly liable for medical expenses. Street was deemed to have a "permanent partial disability under 'Other Cases' amounting to 85% industrial loss of use

of his body, 55% under 'Other Cases' is due to the aforesaid occupational disease, and 30% thereof is due to a pre-existing condition." Each employer was ordered to pay a total of $24,772.50 divided into weekly installments and an additional $10,200.00 was to be paid by the Subsequent Injury Fund.

A rehearing was held on April 11, 1984, and a modified award of compensation was issued on April 30th. In that award, the Commission cut off all temporary total benefits as to the occupational disease finding that those wages had been fully paid but affirmed the award (A 791606) in all other respects. The Commission then specifically addressed the issue of accidental injury (A 809879) and found that "the claimant sustained an accidental injury arising out of and in the course of his employment on December 14, 1978; and that the disability of the claimant is causally related to the aforesaid accidental injury and not occupational disease...." Lucky Stores was held "responsible for one-half of $49,545.00 and the Commission will modify said Order of this Commission dated January 11, 1984...."

Lucky Stores and Prince George's County noted an appeal to the Circuit Court and filed motions for partial summary judgment on the permissibility of an enhanced award under these facts. Lucky Stores (and its insurer, Travelers) framed the issue as follows:

> Under the Workmen's Compensation law of Maryland, may the total disability resulting from *both* an occupational disease and an accidental injury be combined, so as to result in a 'serious disability,' thereby requiring each of two separate employers to pay the increased benefits provided by Section 36(4a) of Article 101?

In an Opinion and Order dated August 6, 1984, Judge Rea denied the employer-insurer's motion. "The finding of the Commission was that the 55% disability was the result of the single myocardial infarction suffered by the claimant. No portion of that figure was allocated to pre-existing conditions." The trial court further opined: "Notwithstand-

ing the fact that the claimant has sought recovery from two defendants, the heart attack was a single accidental event. The occupational disease found by the Commission was the heart attack itself, not a pre-existing heart disease." The trial judge concluded that there was "but one accident, and two theories of recovery."

Following this adverse ruling, Lucky Stores, their insurer and the County filed a "Joint Motion for Entry of Final Judgment" withdrawing all issues "except that issue pertaining to the Award of 'serious disability' benefits in this case." The trial judge granted this motion by a final order dated October 9, 1984. A timely appeal was noted and the only issue is whether Md.Ann. Code art. 101 § 36(4a) (1979, Cum.Supp.1984) permits disability benefits awarded for an accidental injury to be combined with an award for an occupational disease to constitute a serious disability award.

This appeal arises solely from the interpretation of art. 101 § 36(4a) which provides:

> *Serious disability.*—A person who, from one accident, receives an award of compensation for a period of two hundred and fifty (250) weeks or more under subsections (3) or (4) or a combination of both, is thereby considered to have a serious disability; except any award for disfigurement or mutilation under subsection (3)(f) of this section shall not be considered a determination of serious disability. The weeks for such award shall be increased by one third (computed to the nearest whole number); and the compensation shall be for sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed sixty-six and two-thirds per centum of the State average weekly wage of the State of Maryland as determined by the Department of Employment Security. The Department of Employment Security shall report the average weekly wage of the State of Maryland as of July 1, to the Workmen's Compensation Commission Commission no later than December 15th each year. In no case shall the employee receive less than a minimum of fifty dollars per week unless the employee's established week-

ly wages are less than fifty dollars per week at the time of injury, in which event he shall receive compensation equal to his full wages. This subsection, to the extent of any inconsistency, prevails over subsections (3) and (4); but otherwise subsections (3) and (4) apply to persons covered by this subsection. Provided, however, that any additional compensation for permanent partial disability on a petition to reopen shall not increase the amount of compensation previously awarded and actually paid.

The language at issue is "from one accident." Appellants argue that the statute provides "additional benefits for employees severely injured in a single work-related accident." They argue further that the Commission "ignored the clear legislative intent, and awarded serious disability benefits to Mr. Street by combining an occupational disease claim and an accidental injury claim for a single award." Essentially, appellant feels that the two claims, filed against two employers, were erroneously treated as a single claim by the Commission.

Appellee counters that "a single *incident* giving rise to two distinct theories of recovery under Worker's Compensation law can be considered 'one accident' for purposes of 'serious disability' benefits." (emphasis added). Appellee points out that each claim, *i.e.,* the accidental injury and the occupational disease, arose "out of a *single incident,* that being the heart attack of December 14, 1978." Hence, the appellee essentially interprets the term "one accident" to mean a single incident or "event from which the disability arises."

This court recently interpreted this statutory language, albeit in a different context, in *Barbee v. Hecht Co.,* 61 Md.App. 356, 486 A.2d 785 (1985). The issue in that case was "whether the 'serious disability' rates of compensation set forth in Md.Ann. Code art. 101 § 36(4a) (1957, 1984 Cum.Supp.) may be applied to the Subsequent Injury Fund." 61 Md.App. at 357–58, 486 A.2d 785. Barbee injured his back while working at the Hecht Company and filed for Worker's Compensation benefits. At the hearing

it was discovered that Barbee had a pre-existing impairment to his right eye and the Commission ordered that the Subsequent Injury Fund be impleaded. After an additional hearing, the Commission ruled "that [Barbee's] back injury amounted to a 25% industrial loss of the use of his body." *Id.* at 358, 486 A.2d 785. Barbee was awarded $75 per week at the "straight rate" [1] for 125 weeks for his back injury to be paid by the employer-insurer and $74.00 per week (also paid at the "straight rate") for 250 weeks to be paid by the Fund. Both parties appealed the decision. Barbee claimed that the benefits he was receiving from the Fund should have been paid at the "serious disability" rate. Barbee's argument was characterized as follows:

> He reasons that Md.Ann. Code art. 101, § 66(1) (1957, 1984 Cum.Supp.), which explains how one qualifies for payments from the Fund, must be read in *pari materia* with Section 36, which alone provides for the amount and method of payment. When this is done, appellant urges, it becomes apparent that an injured worker who is awarded 250 weeks of compensation for a single pre-existing impairment is entitled to receive those payments at the 'serious disability' rate from the Fund.

*Id.* at 358–59, 486 A.2d 785. Barbee argued that compensation awarded under § 36(4a) for "one accident" "may include both weeks for a pre-existing impairment and weeks for the specific new injury," *i.e.*, he urged a broad reading of the phrase "from one accident." *Id.* at 360, 486 A.2d 785. The Fund disagreed and countered that "[t]he plain meaning of 'from one accident' ... excludes conditions—such as pre-existing impairments—that did not arise from one accident." *Id.* at 359, 486 A.2d 785.

In reviewing the legislative history of § 36(4a), Judge Getty noted:

> A brief analysis of the legislative history of the serious disability statutes reveals that the first such statute was

---

1. *See* Md.Ann.Code art. 101 § 36(4)(a) (1979, Cum.Supp.1984).

enacted in 1965 as an attempt to achieve parity of benefits for certain injuries on the job subsequent to that date. Before that date, a claimant who was permanently totally disabled received $30,000 in benefits while a claimant who was 99% disabled received only $12,500. The serious disability provisions provided for extra payment of benefits where it was determined that a claimant had sustained a certain percentage of disability 'from one accident'; thereby affording an extra protection to workers engaging in high risk and extra-hazardous occupations, and shifting the burden for compensation to employers/insurers in those situations where on the job accidents caused exceptionally severe injuries. Again, appellant has not suggested how this purpose would be furthered by requiring the Fund to pay serious disability rates.

*Id.* at 362, 486 A.2d 785. This court found in favor of the employer-insurer noting that "the Legislature intended a narrow interpretation of the Fund's liability...." *Id.* at 363, 486 A.2d 785 (citing *Duckworth v. Kelly-Springfield Tire Co.*, 30 Md.App. 348, 353 A.2d 1, *aff'd per curiam*, 278 Md. 361, 363 A.2d 965 (1976) and *Subsequent Injury Fund v. Chapman*, 11 Md.App. 369, 274 A.2d 870, *aff'd per curiam*, 262 Md. 367, 277 A.2d 444 (1971)).[2] Furthermore, there was no indication that the legislature intended anything other than the "plain meaning of the word 'accident' in Section 36 (4a)." The rates accorded in § 36(4a) were found to be applicable only "to payments made by the

---

**2.** In *Chapman* this court held that certain benefits paid out of the Subsequent Injury Fund passed to the claimant's surviving spouse. Subsequent legislation changed the effect of that holding. In the later *Duckworth* case, this court noted the legislative amendment and stated "that the language in § 36(4a) that a person must receive an award of 250 weeks compensation under § 36(3) or (4) or a combination of both to qualify for serious disability benefits, should not be read as including an award under § 66(1)." 30 Md.App. at 348, 353 A.2d 1. Thus, a claimant was deemed to be entitled to "serious disability" benefits "only when the award of compensation for a subsequent injury alone equals or exceeds 250 weeks." *Id.* [11 Md. App.] at 356, 274 A.2d 870.

employers/*insurers when a single accident results in their paying 250 weeks or more of compensation." Id.* [61 Md.App.] at 364, 486 A.2d 785 (emphasis added).

In sum, this court chose to employ the plain meaning of the phrase "from one accident." The holding in *Barbee* clearly supports the position of appellants in the case *sub judice.* The Commission did find the existence of *both* an occupational disease and an accidental injury [3] and then simply held both employers liable without any attempt to apportion between the two findings. This is not to say that these two findings are incompatible. *See Lovellette v. City of Baltimore,* 297 Md. 271, 465 A.2d 1141 (1983) (discussed in footnote 3). It is, therefore, necessary to apportion [4] between the two findings and thereby determine more specifically the liability of each employer.

If appellee-claimant's disability was actually apportioned between the accidental injury and occupational disease, could these two percentages then be combined, thereby qualifying a claimant for payments at the serious disability rates? The language employed by the *Barbee* court suggests that this question must be answered in the negative. Appellant also relies on those cases precluding the aggrega-

---

**3.** There is nothing wrong in finding the existence of both an accidental injury and an occupational disease as indicated in *Lovellette v. City of Baltimore,* 297 Md. 271, 465 A.2d 1141 (1983). In *Lovellette* a fire fighter suffered a heart attack after lifting a heavy overhead door. In light of the strain prior to onset, the Medical Board and Commission ruled the heart attack to be an accidental injury and found that the statutory presumption of occupational disease did not apply. *See* art. 101 § 64A. In overruling the Commission, the Court of Appeals stated that nothing in the statute indicated that there could be no occupational disease if the heart attack initially manifested as an accidental injury. 297 Md. at 283, 465 A.2d 1141. That is, the presumption of an occupational disease still applies even if precipitated by an accidental personal injury. *Id.* at 284, 465 A.2d 1141.

**4.** *See generally Trotta v. County Car Center, Inc.,* 292 Md. 660, 441 A.2d 343 (1982) ("for there to be an apportionment, the pre-existing disease or infirmity must have been combined with the disability for which claim is being made to create a greater disability on the part of the workman than would have occurred without the effect of the pre-existing condition").

tion of a pre-existing condition and an accidental injury to create a serious disability. For example, in *Ferretto v. Subsequent Injury Fund*, 53 Md.App. 514, 454 A.2d 866 (1983), the claimant suffered a back injury amounting to an 85% industrial loss of his body. Fifty percent was attributed to the accidental injury and 35% to a pre-existing condition. The issue on appeal was whether the Subsequent Injury Fund [5] should be required to pay benefits for the pre-existing impairment at the serious disability rate (§ 36(4a)) [6] or at the straight rate (§ 36(4)(a)). Section 66, which governs the Subsequent Injury Fund, does not contain a specific payment schedule, hence, reference must be made to Section 36. *Id.* at 518, 454 A.2d 866. In finding that the straight rate was applicable, this Court opined: "Three cases [7] have been decided, however, which deal with the issue of aggregating claims in order to qualify a claimant for serious disability compensation, and taken together they demonstrate a clear legislative intent and pattern of judicial construction against such a practice." *Id.* at 520, 454 A.2d 866. The serious disability rate need not be applied to the award for the accidental injury *and* the

---

**5.** *See generally* Md.Ann.Code art. 101 § 66 (1979, Cum.Supp.1984).

**6.** The *Ferretto* court noted that the purpose of the serious disability rate was to provide enhanced compensation to "certain new categories of persons having a serious disability." 53 Md.App. at 518, 454 A.2d 866 (citation omitted).

**7.** Those three cases are: (1) *Barnes v. Ezrine Tire Co.*, 249 Md. 557, 241 A.2d 392 (1968) wherein a claimant suffered multiple injuries, one of which qualified under § 36(3a) as a serious disability. The Commission combined all of the injuries to qualify the entire accident as a serious disability. The Court of Appeals reversed, finding no basis for combining a non-qualifying award under one subsection with a qualifying award under the other subsection so as to make both of them qualify." 249 Md. at 562, 241 A.2d 392; (2) *Zebron v. American Oil Co.*, 10 Md.App. 308, 270 A.2d 339 (1968) wherein this court refused to aggregate two accidental injuries, one of which occurred prior to the effective date of § 36(4a), to qualify the claimant for serious disability payments; (3) *Duckworth v. Kelly-Springfield Tire Co.*, 30 Md.App. 348, 353 A.2d 1, *aff'd per curiam*, 278 Md. 361, 363 A.2d 965 (1976) (discussed in text *infra*).

award for a pre-existing impairment, "where only the former exceeds 250 weeks...." *Id.* at 524, 454 A.2d 866. It must be noted that the *Barbee* decision overruled *Ferretto* "to the extent [it] stands for the proposition that Section 36(4a) is applicable to the Fund's payments for pre-existing impairments...." *Barbee,* 61 Md.App. at 361, 486 A.2d 785. The result in *Ferretto* would be unchanged. *Id.* at 361 n. 1, 486 A.2d 785.

Also, in *Duckworth v. Kelly Springfield Tire Co.,* 30 Md.App. 348, 353 A.2d 1, *aff'd per curiam,* 278 Md. 361, 363 A.2d 965 (1976), the claimant suffered a back injury and received a rating of 52% industrial loss of use of his body. Forty-two percent of said rating related to the accidental injury and 10% related to a pre-existing impairment. The claimant, by combining the two ratings, alleged he was entitled to additional benefits because he had suffered a serious disability under § 36(4a). Judge Davidson, then speaking for this court, held:

> In our view, the legislative declaration of intent in Art. 101, § 66(1) does not mandate than an award of compensation for a previous impairment under that section, and an award of compensation for an injury under Art. 101, § 36(4), be combined to determine eligibility for serious disability benefits under Art. 101, § 36(4a). Therefore, we cannot agree that the claimant is entitled to increased benefits.

*Id.* at 352, 353 A.2d 1. Hence, an award for a previous impairment cannot be added to a subsequent injury when computing eligibility for a serious disability. *Id.* at 354, 353 A.2d 1. "A claimant is entitled to 'serious disability' benefits only when the award of compensation for a subsequent accidental injury *alone* equals or exceeds 250 weeks." *Id.* at 356, 353 A.2d 1.

Although these cases are not exactly on point, appellant contends that they lend support by analogizing a pre-existing impairment with an occupational disease. An occupational disease has been judicially defined as "some ailment,

disorder, or illness which is the expectable result [8] of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in its approach." *Foble v. Knefely,* 176 Md. 474, 486, 6 A.2d 48 (1939). *See also* Md.Ann.Code art. 101 § 67(13) (1979) wherein occupational disease is defined as "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment...."

An occupational disease is analogous to a pre-existing impairment, under the facts of this case, in that there was no prior incapacity until the occurrence of the accidental injury. Appellee is correct in his assertion that he would not have had a disability claim for an occupational disease absent an actual incapacitation. *See* Md.Ann.Code art. 101 § 67(13); *Belschner v. Anchor Post Products,* 227 Md. 89, 95, 175 A.2d 419 (1961) (saw operator not entitled to benefits for hearing loss when he was still able to perform the same job). Similarity arises where, as here, pre-existing non-compensable physiological infirmity (manifested by occupational disease or physical impairment) becomes compensable when combined with a converging accidental injury.

Finally, we note that although the Worker's Compensation statutes are generally construed liberally in favor of the claimant because "[a]ny uncertainty in the meaning of the statute [is] resolved in favor of the claimant," in the case *sub judice* there is no ambiguity or uncertainty surrounding the language of § 36(4a). *Lovellette v. City of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983) (citations omitted). Thus, this rule of statutory construction is inapposite. Accordingly, we hold that the trial court erred in affirming the award of the Worker's Compensation Commission.

---

8. *See* Md.Ann.Code art. 101 § 64A (1979) (presumption that heart disease suffered by a paid police officer is an occupational disease).

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE WORKER'S COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.