## WILLARD T. LEACH, SR. *v.* JOHN T. CLARK & SON, INC. ET AL.

[No. 218, September Term, 1973.]

*Decided February 13, 1974.*

The cause was argued before ORTH, C. J. and POWERS and MOORE, JJ.

*J. Hardin Marion* for appellant.

*William H. Kable* and *Albert A. Levin, Special Assistant Attorneys General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Willard T. Leach, Sr., then working in Baltimore as an employee of John T. Clark & Son, Inc., sustained an accidental injury on 3 January 1969 when an elevator he was on fell from one floor to another. The injury arose out of and was sustained in the course of his employment.

Leach filed a claim with the Workmen's Compensation Commission. Several hearings were held during 1970 and 1971. On 28 May 1971 the Commission passed an order giv-ing effect to its findings "that the claimant sustained a permanent partial disability under 'Other Cases' amounting to 10% industrial loss of use of his body" and "that the claimant sustained a permanent total disability resulting in 90% loss of use of his body as a whole due to a pre-existing accident or disease or congenital condition, and is receiving Retirement benefits in lieu of compensation and further compensation for same from the State of Florida."

The Commission further said:

> "The employer and insurer shall assume the responsibility for 10% of the claimant's disability in the amount of $3,000.00, and pursuant to Section 66, Sub-section 1 of Article 101, the Subsequent Injury Fund is not responsible for any payment of compensation as the benefits received under the Florida Law exceed the benefits payable under said Section."

An order for appeal and petition were filed by Leach in the Superior Court of Baltimore City. The case was submitted to Judge Joseph L. Carter upon the record made before the Commission, and upon arguments of counsel.

Judge Carter filed an opinion and order on 23 March 1973. He concluded that the Commission, after finding 10% permanent partial disability, had made an error in applying that 10% to the $30,000 maximum provided at the time of the injury for permanent total disability. This error resulted in the Commission's order that the employer and insurer make weekly payments not to exceed the sum of $3,000.00.

He determined that the 10% should have been applied to the $12,500 maximum allowable under "Other Cases", which would result in a total payment of $1,250. Judge Carter's order modified the Commission's award in that respect and, with that modification, affirmed the award. Appellant concedes that this modification was correct. He asserts no error in the modified award as far as the employer and insurer are concerned.

The much more far-reaching effect of the Commission's award was, of course, its conclusion that payments being received by Leach under Florida law were in lieu of compensation, and that the Subsequent Injury Fund was not responsible for any payment of compensation. It is that issue which is the sole basis of the appeal to this Court. Appellant states the question in his brief as follows:

> "Is a disability retirement pension paid to a municipal employee in another state a 'prior award made ... by a similar commission in any other state,' as required by Article 101, Section 66(5), of the Annotated Code of Maryland, to be considered by the Commission in making an award from the Subsequent Injury Fund?"

The section of the Code referred to provides:

> "In making any award from the fund for a subsequent injury, the Commission shall consider any prior award made by the Commission, or by a similar commission in any other state or in the District of Columbia, in determining the amount to be awarded for such subsequent injury."

Facts relating to the current injury and to the prior injury are of minor significance to the issue involved. The prior injury was sustained on 20 January 1962 in the course of Leach's employment as a traffic patrolman in the police department of the City of Tampa, Florida. He was involved in a motorcycle accident and suffered serious injuries. Employees of the City of Tampa were entitled to benefits as provided in the Florida Workmen's Compensation Act. The

city was a self-insurer under the compensation law. It also provided benefits to certain of its employees under a Policemen and Firemen's Pension Act. Leach was placed on a disability pension by the pension fund. The city separately paid medical expenses under the workmen's compensation law.

A month after the accident, on a form dated 20 February 1962, the City of Tampa, as employer, reported to the Florida Industrial Commission, Workmen's Compensation Division, that Willard T. Leach, injured on 20 January 1962 is to be paid compensation of $42.00 a week until notice is given to the commission that payment has been stopped. In December 1963 the commission wrote to the city acknowledging an interim progress report on the Leach compensation claim. The letter pointed out that the commission file indicates that this 30 year old policeman is apparently permanently and totally disabled, and that by a 1955 amendment to the Compensation Act a permanent disability is in effect a life pension. The letter said that a life expectancy of 41.91 years required a higher compensation reserve than the city had set up, and suggested a reserve of $25,000.

In February 1965 the Claims Examiner for the commission, in a letter responding to an inquiry from Mr. Leach's wife, said:

"As I stated, your husband was rated at 100% permanent total for the January 1962 injury and, in effect, is entitled to benefits for Workmens Compensation for the rest of his life. Since Mr. Leach is on a disability pension, it is my understanding that $42 per week is considered Workmens Compensation payment. Mr. Leach, however, is entitled to medical treatment and any other medically related benefits, as long as the disability lasts, that is the rest of his life. Mr. Leach would be entitled to additional cash payments if the pension payments were dropped below $42. per week."

Further light is shed on the payments by the City of

Tampa in a letter from its legal department to Mrs. Leach in January 1967. The letter discussed a possible settlement of potential liability, later consummated. It said:

"To further explain our position in this matter, we would point out that it has been ruled by the Industrial Commission that where the employer is also the self-insured, and pays both pension and compensation, that the employee will be allowed whichever of the two is the greater, but not both. In this instance, Mr. Leach's pension is considerably more than would be his compensation and therefore he is naturally being paid his pension. The only payments now being made under the Compensation Act are for medical, and therefore the offer of the $1,000.00 for the compensation settlement, was purely a formality to take this case off our books * * *."

In keeping with the above statement, you might like to know that at the time of the injury, compensation benefits that Mr. Leach would have been entitled to, would have been $42.00 per week. It is our understanding that Mr. Leach's pension is $227.50 per month. A little arithmetic will show you that he is receiving more money under the Pension Act than he would through compensation."

The question we are required to answer may be stated thus: Was an award made by the Florida Industrial Commission to Willard T. Leach for his January 1962 injury?

We have had only one occasion to apply the prior award clause in the Subsequent Injury Fund section of the compensation law. *Subsequent Injury Fund v. Chapman*, 11 Md. App. 369, 274 A. 2d 870 (1971), affirmed 262 Md. 367, 277 A. 2d 444 (1971). We decided in *Chapman* that the prior award should be deducted only in terms of absolute dollars awarded, not in dollars that would be awarded currently for the percentage of disability sustained in the prior injury. We

pointed out, at 372, that it was the intent of the act creating the Fund

> "to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability."

The purpose for which the Fund was created was well expressed by Judge Finan for the Court of Appeals in *Subsequent Injury Fund v. Pack*, 250 Md. 306, 242 A. 2d 506 (1968). We noted in *Subsequent Injury Fund v. Rinehart*, 12 Md. App. 649, 280 A. 2d 298 (1971) the social and economic public policy expressed by the Legislature in enacting Code, Art. 101, § 66.

We deem its purpose to be achieved when an injured employee, suffering a permanent disability, either total or greater than 50% of the body as a whole, is assured the receipt of compensation in an amount not less than that provided by the law of Maryland at the time of the injury from which the claim arose. That compensation may come from more than one compensation award, so long as the aggregate satisfies the intent of the law. The first award must be against the employer in whose employ the current compensable injury was sustained, and that employer's insurer. Next considered is any prior award or awards made under the law of Maryland or any other state or the District of Columbia. If these current and prior awards fall short of the total which our law assures the disabled employee, the difference is awarded against the Subsequent Injury Fund.

Leach argues throughout his brief that the Commission and the lower court erred in holding that the Subsequent Injury Fund is entitled to credit for the retirement benefits payable under a pension contract. We do not read either the Commission's order or Judge Carter's opinion and order as so holding. The Commission referred to "benefits received under the *Florida Law*" and Judge Carter said, "the Florida compensation award was a 'similar award' * * *." Neither

held that the entire pension should be credited, but each considered that portion of the pension which represented compensation.

Within the meaning of "prior award" as used in Code, Art. 101, § 66(5) we hold that when the Florida Commission notified the City of Tampa, as employer, that the minimum it must pay to Leach was the amount allowable under the Florida compensation law, and required the establishment of a reserve against this liability, it made an award. That the Florida authorities chose to accomplish this result by way of correspondence between the state agency and the city government, rather than by a formal order, in no way impairs the effect of the commission's action to assure that Leach would receive the full benefit of the compensation law.

The Florida commission advised Mrs. Leach that $42 per week of the disability pension was considered Workmen's Compensation payment. Since it was so considered by the responsible authorities in Florida, it was proper for the Maryland Commission to consider it as a prior award.

*Order of 23 March 1973 affirmed.*
*Appellant to pay costs.*