C & P TELEPHONE COMPANY OF MARYLAND
*v.* SUBSEQUENT INJURY FUND

[No. 620, September Term, 1982.]

*Decided January 10, 1983.*

The cause was argued before MORTON, ADKINS and ALPERT, JJ.

*Philip T. McCusker* for appellant.

*John J. Szymanski, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

*Amicus curiae* brief of Wiremold Company and Aetna Insurance Company filed. *Alfred M. Porth, Theodore B. Cornblatt, S. Woods Bennett, Jeffrey C. Herwig* and *Smith, Somerville & Case* on the brief.

ADKINS, J., delivered the opinion of the Court.

On December 16, 1977, John H. Fersinger, Jr., collapsed and died while carrying out duties for his employer, appellant, C & P Telephone Co. of Md. He was survived by a wholly-dependent widow and minor children.

The Workmen's Compensation Commission found that his death was due in part to a prior impairment and in part to the accidental injury that had occurred on December 16, 1977. It apportioned the cause of death 40 percent to the accidental injury and 60 percent to the prior impairment. It ordered C & P to make payment to the extent of 40 percent of $45,000 ($18,000) and appellee, the Subsequent Injury Fund, to make payment of 60 percent of $45,000 ($27,000) upon completion of C & P's share. It also ordered the Fund, upon completion of the payment of the $27,000, to pay all further dependency benefits, so long as the dependents continue to be totally dependent.

The Fund appealed to the Baltimore City Court (Grady, C.J.) which reversed the Commission and held that the

continuing benefits should be paid by C & P and the Fund in the same proportion (40 percent and 60 percent) as the initial benefits had been paid.

On this appeal, apparently a case of first impression, C & P and *amici curiae* Wiremold Co. and Aetna Insurance Co. argue that the Fund should be responsible for all continuing benefits. The Fund contends that the Baltimore City Court was correct in apportioning those benefits between it and C & P.

Article 101 § 66 (1) of the Code applies when "the subsequent injury of ... an employee shall result in the death of the employee and it shall appear that death was due in part to the previous impairment and in part to the subsequent accidental injury...." Under those circumstances, the Workmen's Compensation Commission is required to "determine the proportion of such death which is reasonably attributable to the subsequent accidental injury and the proportion thereof which is reasonably attributable to the previous impairment, and the employer ... shall be liable for the compensation payable for that proportion of the employee's death which is reasonably attributable to the subsequent accidental injury and the Subsequent Injury Fund shall be liable for the *balance of benefits payable as in death cases resulting solely from an accidental injury* [emphasis supplied.]"

Article 101 § 36 (8) (a) provides for the benefits payable in death cases when there are surviving wholly-dependent persons. The initial benefit is set at $45,000, payable at a weekly rate specified in the statute. But if, as here, "a surviving wife ... or child continues to be totally dependent after the total amount of $45,000.00 has been paid, further payment to the surviving wife ... or child shall be paid at the same weekly rate during ... total dependency."

The issue of whether these continuing benefits, to which a dependent is entitled as long as he or she remains in that status, should be apportioned could not have arisen in a death case prior to July 1, 1973. Prior to that date, there was a fixed monetary ceiling on benefits payable in death cases.

But by Chapter 671, Laws of 1973, Art. 101 § 36 (8) (a) was amended to provide for "further payments" to dependents after payment of the total amount of $45,000. The pertinent provisions of § 66 (1) were not changed.

In deciding this controversy as to the allocation of statutory dependency benefits between an employer and the Fund, it is important to keep in mind the purpose the Fund is intended to serve. This purpose is to limit the liability of an employer who hires a handicapped individual who subsequently dies or becomes seriously disabled because of the combined effects of an injury on the job and a prior handicap or impairment. Generally speaking, this limitation is achieved by allocating to the employer liability for the effects of the subsequent injury and to the Fund the liability for the effects of the prior impairment; *Anchor Motor v. Subsequent Injury Fund,* 278 Md. 320, 363 A.2d 505 (1976), *aff'ing sub nom. Subsequent Injury Fund v. Compton,* 28 Md. App. 526, 346 A.2d 475 (1975); *Subsequent Injury Fund v. Pack,* 250 Md. 306, 242 A.2d 506 (1968); *Reliance Insurance Co. v. Watts,* 16 Md. App. 71, 293 A.2d 836 (1972); *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 274 A.2d 870, *aff'd per curiam* 262 Md. 367, 277 A.2d 444 (1971).

In disability cases involving § 66 (1), this limiting effect is achieved by first determining the extent of disability that would have been caused by the subsequent injury, had there been no prior impairment, and requiring the employer to pay compensation to that extent. *Reliance Insurance, supra.* If that injury is in and of itself sufficient to cause the entire disability, the employer pays all the compensation and the Fund is relieved from responsibility. *Anchor Motor, supra.* Otherwise, the Fund pays the compensation for that portion of the disability that has not been attributed to the subsequent injury; namely, the portion due to the prior impairment. For obvious reasons, division of compensation liability in death cases is somewhat different, but the result is still to have the employer pay for only that portion attributable to the subsequent injury, and have the Fund pay for that portion attributable to the prior impairment.

But to say that the purpose of the Subsequent Injury Fund law is to limit the employer's liability when that law applies does not necessarily mean that in a death case the Fund is required to pay all dependency benefits once the $45,000 sum has been distributed. As we said in *Dent v. Cahill,* 18 Md. App. 117, 129, 305 A.2d 233, 240 (1973):

> There is nothing . . . in the legislative policy . . . that directly or indirectly suggests that the Fund shall bear more than its lawful proportionate share of [compensation benefits]. Neither the social nor economic policy of § 66 (1) requires shifting to the Fund any portion of the employer's obligation. The employer is required to pay no more than that portion of the disability attributable to the additional accidental injury . . . and he is obligated to pay no less.

Prior to the 1973 amendment of § 36 (8) (a) it is clear that C & P would have been required to pay 40 percent of all benefits payable in this case and the Fund would have been required to pay 60 percent. The 40 percent would have been the portion "reasonably attributable to the subsequent accidental injury" and the 60 percent would have been the "balance of benefits payable as in death cases resulting solely from an accidental injury." That result is entirely consistent with the holding in *Reliance, supra,* which was not a death case. In any event, *Reliance* must be read in the statutory context in which it was decided: an allocation of liability within the limits of a fixed monetary ceiling; the same situation that prevailed under § 36 (8) (a) before the 1973 amendment.

We must now decide how to apply the "balance of benefits" language of § 66 (1) in light of the current wording of § 36 (8) (a). We think the phrase must be construed in light of the preceding language of § 66 (1) which requires the Commission to apportion to the Fund the "proportion of such death which is reasonably attributable . . . to the previous impairment. . . ." In other words, the total liability is to be shared between employer and Fund, and the limitation of

the employer's liability is only to the extent of the proportion of death caused by the subsequent injury.

There is no reason to assume that the legislature intended to change this basic policy of distributing the burdens between the employer and the Fund when it adopted the 1973 amendments.[1] On the contrary, it is more reasonable to conclude that the legislature intended the pre-existing apportionment arrangement to continue, with the total liability for whatever benefits might be payable, initial benefits as well as continuing benefits, being derived from the underlying allocation of cause of death as between the subsequent injury and the prior impairment. If this sharing of liability in proportions determined by the Commission was consistent with legislative policy prior to 1973, it is equally consistent with that policy now. The fact that in 1973 the legislature decided to extend dependency benefits as it did does not manifest an intention to make the Fund bear the full burden of that extension. Had it intended otherwise, it could readily have expressed that intent by amending § 66 (1). In sum, we agree with Chief Judge Grady that "neither the law nor logic dictates that the basic responsibility of the employer and the Fund should differ" between the initial and continuing payments under this award.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

1. C & P urges that when we attempt to ascertain legislative intent in this case, we should apply the maxim that statutes in derogation of the common law should be strictly construed. The Workmen's Compensation Law is such a statute, but by its own terms, it provides: "The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article . . . ;" Art. 101 § 63.