566 A.2d 94

**SUBSEQUENT INJURY FUND**

v.

**John W. TENEYCK et al.**

**No. 36, Sept. Term, 1989.**

Court of Appeals of Maryland.

Nov. 27, 1989.

Motion for Reconsideration Denied Dec. 20, 1989.

Joanne F. Voelkel, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Sophia L. Swope, Asst. Atty. Gen., Towson, all on brief), for appellant.

Herbert J. Arnold, Janet D. Bacot, James P.A. O'Conor, Jr., Law Offices of John W. Hershberger, II, on brief, Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

The issue in this workers' compensation case is whether Maryland Code (1957, 1988 Cum.Supp.), Article 101, § 36(3)(d), a "scheduled member" provision of the Work-men's Compensation Article, applies when the claimant qualifies for compensation from the Subsequent Injury Fund pursuant to Maryland Code (1957, 1985 Repl.Vol.), Article 101, § 66, and the worker's prior impairment is to a "sched-uled member." [1] The appellant, the Subsequent Injury Fund (the Fund), asks this Court to reverse the circuit court's holding that the Fund must compensate the claimant

---

1. All references to § 66 are to Maryland Code (1957, 1985 Repl.Vol.), Article 101, and references to § 36 are to Md.Code (1957, 1989 Cum.Supp.), Article 101.

for his pre-existing impairment according to the scheduled member provision.

## I.

Appellee John Teneyck (Teneyck) was blinded in his right eye at age eight.[2] On 6 May 1985, he injured his lower back while at his place of employment, the Montgomery Village Amoco Station.

The Workmen's Compensation Commission (the Commission) decided that

> claimant sustained a permanent partial disability under "other cases" [Article 101, § 36(3)(j)] amounting to 55% industrial loss of use of the body as a result of the injury to the back and right eye; 25% is due to the accidental injury and 30% is due to pre-existing conditions.

The Commission ordered the employer to pay $109 for 125 weeks, and ordered the Fund to pay $109 for 150 weeks. The award against the Fund was computed under the "other cases" provision of § 36(3)(j).

Teneyck appealed this order to the Circuit Court for Frederick County arguing that compensation for his prior impairment should have been assessed under § 36(3)(d), a "scheduled member provision." The circuit court agreed with Teneyck, ordering the Commission to revise the Fund's liability to $109 for 250 weeks, under § 36(3)(d).

This Court granted the Fund's petition for writ of certiorari to decide whether the "scheduled member provisions" of the Workmen's Compensation Act apply to Subsequent Injury Fund awards. For the reasons below, we affirm the circuit court decision.

## II.

Section 36 of Article 101 declares that "[e]ach employee ... entitled to receive compensation under this article shall

---

2. Teneyck's employer and the employer's compensation insurer also are appellees. Since the position they espouse is substantially the same as Teneyck's, we identify the appellees collectively under that name.

receive the same in accordance with the following schedule...." It then sets forth a number of "schedules." One of them is § 36(3)(d), a "scheduled member" provision, which establishes the amount of compensation (computed by multiplying a wage factor by a specific number of weeks) to be paid for permanent partial disability produced by reason of loss or loss of use of certain enumerated parts of the body. Loss of an eye calls for 250 weeks.

Section 36(3)(j) applies to "all other cases of [permanent partial] disability other than those specifically enumerated in paragraph (c) through (i)...." As to these "other cases," the Commission is directed "to determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury and in determining [that] portion or percentage ..." take into consideration a number of factors and to "award compensation in such proportion as the determined loss bears to 500 weeks."

Section 66 deals with the Fund. Subsection (1) explains that

[w]henever an employee who has a permanent impairment due to previous accident or disease or any congenital condition which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive ... additional compensation from a special fund to be known as the "Subsequent Injury Fund," created for such purpose, in the manner

described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.

Benefits from the Subsequent Injury Fund hereunder shall not be payable unless the combined effects resulting from a previous impairment and a subsequent accidental injury result in a permanent disability exceeding 50 percentum ... of the body as a whole; and that the previous impairment and subsequent accidental injury is each compensable, as determined by the Commission, for a period of not less than 125 weeks. However, the previous impairment shall be determined as of the date of the subsequent injury.

The Fund argues that according to these provisions, the compensation it owes Teneyck should be computed under § 36(3)(j). The Fund asserts that when the legislature enacted the "scheduled member" provisions it adopted a presumption as to the effect the loss of a "scheduled member" has on an employee's earning capacity. *Cox v. American Store Equip. Corp.*, 283 F.Supp. 390, 394 (D.Md. 1968). Believing that the effect on earning capacity caused by the loss of a member can be at least roughly estimated in advance, says the Fund, the legislature decided that it was fair to make those estimates and incorporate them into the act through the scheduled member provisions. In contrast, the "other cases" provision does not contain a similar presumption, leaving the determination of the effect on earning capacity to the discretion of the Commission. *Id.* In deciding a nonscheduled injury's effect on earning capacity, the Commission considers various factors including "the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of the injury...." Md.Code (1957, 1985 Repl.Vol., 1988 Cum. Supp.), Art. 101, § 36(3)(j).

The Fund insists that when § 66(1) is invoked, the Commission can and should determine the Fund's liability with the benefit of hindsight. The Commission must read §§ 66 and 36 together, considering the criteria of § 66 in light of the facts surrounding the claimant's prior impairment to determine the amount of the Fund's liability. The Fund argues that § 36(3)(j) is the only section which allows the consideration of the factors set forth in § 66(1). It contends that the Commission must operate under the flexible approach of § 36(3)(j) so that it can exercise discretion in assessing the Fund's liability. Although this approach may produce (as in this case) less compensation than that payable under § 36(3)(d), it could produce more under other circumstances.

Teneyck, obviously, interprets the interplay between the subsections differently. He argues that recovery from the Fund is a two-step process. First, the Commission determines whether the claimant meets the criteria of § 66(1) making the Fund responsible for part of the employee's recovery. If the Fund must contribute to the claimant's recovery, then the amount of that contribution is computed by turning to the provisions of § 36 as is done in any case. The results then depend upon whether the prior impairment is a "scheduled member" or an "other cases" injury. Once the Fund's liability is determined, no consideration need be given to the factors in § 66(1). Teneyck also contends that § 36(3)(j) precludes its own use when the impairment is a "scheduled member." We think Teneyck has the better of the argument.

## III.

The contentions of the parties now before us require us once again to explore the murky depths of Article 101. Its often opaque provisions have engaged our attention with some frequency.[3] Nevertheless, we shall once again seek

---

**3.** Enacted in 1914, the article has often been amended in patchwork fashion. Its style is well illustrated by the quotation from § 66(1) at

to discover and effectuate the intent of the legislature, *Rucker v. Comptroller of the Treasury*, 315 Md. 559, 564–565, 555 A.2d 1060, 1063 (1989), this time with respect to the relationship of § 66(1) to §§ 36(3)(d) and 36(3)(j). Because there is a lack of relevant legislative history, we must rely substantially on the language of the statutes in the context of the goals and objectives they seek to achieve. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–516, 525 A.2d 628, 632–633 (1987).

The purpose of the Subsequent Injury Fund established by § 66 is to encourage employers to hire handicapped workers. *McKenzie v. C.C. Kottcamp & Sons*, 311 Md. 54, 57, 532 A.2d 703, 704 (1987); *Subsequent Injury Fund v. Thomas*, 275 Md. 628, 633, 342 A.2d 671, 675 (1975); *Subsequent Injury Fund v. Pack*, 250 Md. 306, 308, 242 A.2d 506, 508 (1968). This purpose is achieved by assuring that if an employer hires a worker with a prior impairment, and if that worker suffers a compensable injury on the current job, then the employer is liable only for the subsequent injury and not the "cumulative effect of the prior and subsequent injuries." *Pack*, 250 Md. at 308, 242 A.2d at 508. The Fund ordinarily makes up the balance, since it must "contribute to the employee's compensation an amount equal to the difference between the award payable for the subsequent injury alone and that payable for the second injury combined with the previous impairment." *Anchor Motor v. Sub. Injury Fund*, 278 Md. 320, 325, 363 A.2d 505, 509 (1976); *Subsequent Injury Fund v. Kraus*, 301 Md. 111, 112, 482 A.2d 468, 468 (1984); *see also McKenzie, supra*.

Section 66 also establishes conditions that must exist before the Fund is brought into the picture. They are: (1)

---

pp. 629–630, *supra*. *See also, e.g.,* § 56 (page and one-third of type broken down into only three sentences). A review of the annotations to Maryland Code, Article 101, reveals how frequently the courts, both state and federal, have been called upon to construe the provisions of Maryland's Workmen's Compensation Act. This suggests the desirability of both formal revision and substantive clarification.

that the combined effects of the previous impairment and the subsequent injury must result in a permanent disability that exceeds 50 percent of the body as a whole; and (2) that the previous impairment and the subsequent injury are each compensable, "as determined by the Commission," for not less than 125 weeks. As we have seen, the Commission found the requisite conditions in this case.

Section 66, then, tells us how the Fund operates and when it comes into play. What it does not tell us is how to compute the amounts payable when the section is properly invoked. As a general rule, § 36 contains this information. As the Court of Special Appeals has observed,

[t]here are no provisions in Section 66 by which to determine the amount, manner, or method of paying benefits for ... awards made against the Fund; these matters can be determined only by reference to the provisions of Section 36, and the schedules therein contained, setting forth the formula to be followed in calculating the amount of awards due injured employees for ... permanent partial disabilities.

*Subsequent Injury Fund v. Chapman*, 11 Md.App. 369, 375–376, 274 A.2d 870, 873–874, *aff'd per curiam*, 262 Md. 367, 277 A.2d 444 (1971). *See also McKenzie, supra; Anchor Motor, supra.* Section 36, in its introductory paragraph, makes it clear that "[e]ach employee ... entitled to receive compensation under this article *shall receive the same in accordance with the following schedule "* [emphasis supplied]. Teneyck is such an employee.

Section 36 contains comprehensive provisions pertaining to the computation of awards. It distinguishes between different kinds of disability, *e.g.*, permanent total (subsection (1)), temporary total (subsection (2)), and permanent partial (subsection (3)). Teneyck's disability is in the last mentioned category. Thus, we turn to subsection (3).

That subsection is itself subdivided into paragraphs dealing with types of injuries or impairments. Paragraph (a) makes it clear that "[i]n [the] case of disability partial in

character but permanent in quality, compensation *shall be paid to the employee at the rates enumerated for the periods as follows"* [emphasis supplied]. Paragraphs (c) and (d) both deal with flat weekly payment periods for loss or loss of use of specified parts of the body. Paragraph (j) covers "all . . . cases of disability other than those specifically enumerated . . . in paragraphs (c) through (i). . . ." The statutory scheme and the statutory language combine to persuade us that compensation for loss or loss of use of a bodily member listed in one of the scheduled member provisions is to be calculated by that provision; paragraph (j) only applies, as its language explains, to "other cases." We intimated as much in *Anchor Motor:*

> Section 36 of Article 101 . . ., delineating benefits payable to claimants . . ., is divided into several subsections which apply to various types of disabilities, the following of which are applicable to this appeal [involving among other things prior impairment by virtue of injury to scheduled members]: § 36(1), pertaining to permanent total disabilities; § 36(3) [now § 36(3)(c)–(i) ], applying to permanent partial disabilities (enumerated injuries); and § 36(4) [now § 36(3)(j) ], pertaining to permanent partial disabilities (other, non-specific cases).

*Anchor Motor,* 278 Md. at 322 n. 1,. 363 A.2d at 507 n. 1.

The evolution of Article 101 supports our analysis. Prior to the introduction of the occupational disease provisions, currently codified as Maryland Code (1957, 1985 Repl.Vol.), Article 101, §§ 22–26, and the Subsequent Injury Fund provisions, the article provided, in § 36, methods for computing awards for compensable impairments. Two methods existed for computing awards in permanent partial disability cases, one using the "scheduled member" provisions, and the other using the "other cases" provision. When the occupational disease sections were added in 1939, the legislature did not introduce a new method for calculating the amount of compensation for these diseases. Except in a few specifically enumerated instances, it intended the "scheduled member" and "other cases" provisions to be

applied as appropriate. Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 22(a).

Thus, by the time the General Assembly introduced the Fund concept in 1945, it was established that an award, for an impairment compensable under Article 101, was to be computed pursuant to the appropriate schedule in § 36, unless otherwise noted. Nothing within § 66 indicates that the legislature had any intention of changing the method of compensation laid out in § 36 for "scheduled members" or "other cases."

The legislature has been careful to specify which provisions of § 36 are not applicable to the Fund, when it intends that result. *See, e.g.,* § 36(1)(c) (Fund not involved when certain waiver executed), § 36(3)(a)(iii) (serious disability provision does not apply to Fund cases),[4] § 36(3)(*l*) (certain survival provisions "do not apply to the provisions of § 66"),[5] § 36(6) (apportionment of permanent disability due in part to pre-existing disease or infirmity subsection not applicable where requirements of § 66(1) are met). The scheduled member provisions of § 36 contain no disclaimer of this sort.

Our conclusion is that the provisions of § 36 mean what they say, in the context of this case. The General Assembly decided that awards for loss or loss of use of certain members were to run for specific periods. That appears to be a legislative determination that the indicated loss or loss of use has a legislatively-decided effect on industrial loss of use. Commission discretion is preempted with respect to that question, when a scheduled member is involved. The

---

**4.** The "serious disability" rates apply when an employer must pay a claimant for 250 weeks or more for an impairment resulting from "one accident." In Fund cases, the impairment(s) arise from at least two incidents. Thus, the "one accident" language displays legislative purpose not to impose liability on the Fund in a "serious injury" case. *Barbee v. Hecht Co.,* 61 Md.App. 356, 486 A.2d 785 (1985).

**5.** An apparent legislative response to *Subsequent Injury Fund v. Chapman,* 11 Md.App. 369, 274 A.2d 870, *aff'd per curiam,* 262 Md. 367, 277 A.2d 444 (1971); *see Barbee,* 61 Md.App. at 363, 486 A.2d at 788.

General Assembly made the various § 36 schedules applicable generally to all compensation payable under Article 101. It did not exclude the Subsequent Injury Fund from the provisions of § 36(3)(d). We hold that § 36(3)(d) applies in this case.[6] In doing so, we give effect to both §§ 36(3)(d) and 36(3)(j), *see Sinai Hosp. v. Dep't of Employment,* 309 Md. 28, 39–40, 522 A.2d 382, 388 (1987) (court should give effect to all parts of a statute, and not render legislative provisions surplusage), and we also carry out another goal of § 66(1):

> to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in ... a substantially greater permanent partial disability.

As we explained in *Pack,* the employer pays for the second injury and the Fund pays for "the balance of the total award, so that the sum of the two payments [will] equal the compensation provided by statute for the combined effects of both the previous disability and the subsequent injury." 250 Md. at 308, 242 A.2d at 508. *See also Anchor Motor,* 278 Md. at 325, 363 A.2d at 509, and *C & P Telephone Co. v. Subsequent Inj. Fund,* 53 Md.App. 508, 511, 453 A.2d 1243, 1244, *aff'd per curiam,* 297 Md. 339, 466 A.2d 39 (1983) (explaining mechanics of allocation between employer and Fund).

---

**6.** The dissent contends that this application of the statute's provisions may sometimes produce illogical results. If that is true, it is a problem that we have learned to live with in the world of worker compensation. As long ago as *Bata Shoe Co. v. Chvojan,* 188 Md. 153, 159, 52 A.2d 105, 108 (1947), we observed:

> The fact that a claimant, who receives compensation for both a first and a second injury, may ultimately receive more than the maximum compensation allowable for a single injury, is not material. The compensation law fails to meet the test of logical consistency in many respects.... It is our duty to construe the Act, not to revise it.

*See also McKenzie v. C.C. Kottcamp & Sons,* 311 Md. 54, 56, 532 A.2d 703, 704 (1987).

The Court of Special Appeals has said that the purpose of § 66 is "achieved when an injured employee, suffering a permanent disability, either total or greater than 50% of the body as a whole, is assured the receipt of compensation in an amount not less than that provided by the law of Maryland at the time of the injury from which the claim arose." *Leach v. John T. Clark & Son*, 20 Md.App. 109, 114, 314 A.2d 689 (1974). So far as Teneyck is concerned, the law of Maryland provided 250 weeks for his prior impairment. The Circuit Court for Frederick County did not err when it required the Fund to pay Teneyck for that impairment pursuant to § 36(3)(d).[7]

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.

McAULIFFE, Judge, dissenting.

I do not agree that the General Assembly intended to mandate use of the scheduled disability section for determining the degree of previous impairment in Subsequent Injury Fund cases. Section 66(1) of Article 101 contemplates, indeed requires, that the determination of the percentage of industrial disability resulting from the combined effects of a previous impairment and a subsequent disability be made in terms of the disability of the body as a whole. That is precisely what the Commission did in this case in finding a combined disability of 55 percent of the body as a

---

7. At oral argument, the Fund represented to us that the circuit court's decision in this case was contrary to the general practice of the Commission. It presented no documentation to support this assertion, which Teneyck denied. *Compare McKenzie v. C.C. Kottcamp & Sons*, 311 Md. 54, 62, 532 A.2d 703, 707 (1987), in which there was general agreement as to the thinking of the Commission on a particular point. But in at least one reported decision, a "scheduled member" provision of § 36 was applied to the Fund pursuant to § 66(1). *Barbee v. Hecht Co.*, 61 Md.App. 356, 486 A.2d 785 (1985). As was the case in *McKenzie*, the General Assembly has amended § 66 (and also § 36) on several occasions since *Barbee*, "but has done nothing to modify the administrative practice reflected in" *Barbee*. This factor is "also entitled to weight in our construction of § 66(1)...." *McKenzie*, 311 Md. at 62, 532 A.2d at 707.

whole, made up of a 30 percent industrial disability resulting from the previous loss of sight in one eye and a 25 percent disability resulting from the current industrial injury. The majority's approach artificially, and unnecessarily, deviates from the intended legislative scheme and provides a windfall to the employee. Instead of properly allowing the Commission to determine the actual percentage of previous industrial disability suffered by a claimant, the majority insists upon using a schedule established for an entirely different purpose.

The schedule set forth in Section 36 serves a useful purpose in avoiding endless litigation concerning the prediction of the extent of industrial disability likely to result from an anatomical disability suffered to a part of the body. However, as useful as the schedule may be in the initial awarding of benefits for the future, it is unnecessary and inapplicable when the task is the retrospective evaluation of a pre-existing disability.

In the instant case, the Commission could and did determine the overall industrial disability that the loss of an eye had actually caused to this claimant at the time the current injury occurred. The Commission found that that disability was 30 percent of the body as a whole. The effect of the majority's decision is to require that the finding of this pre-existing disability necessarily be deemed to be 50 percent of the body as a whole. This is so because the schedule established by Section 36 awards 250 weeks for the loss of an eye, and under the current worker's compensation law the whole body is measured in terms of 500 weeks. See Art. 101, § 36(3)(j). Adding the 50 percent pre-existing disability to the 25 percent disability that the Commission found to have resulted from the current injury produces an overall disability of 75 percent of the body as a whole. This is a disability that this claimant does not have, according to the findings of the Commission, and it is a disability that should not be awarded. The majority has rewritten the findings of the Commission in a manner that I

believe is inconsistent with the overall intent of the legislature in adopting the Subsequent Injury Fund concept.

I would reverse the judgment of the Circuit Court for Frederick County.