52 A.3d 122

**Russell T. SCHAFFER**

v.

**SUBSEQUENT INJURY FUND.**

**No. 548, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 4, 2012.

---

Stephen J. Kleeman, Towson, MD, for appellant.

Edward W. Goldsmith (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., MEREDITH and MATRICCIANI, JJ.

MEREDITH, J.

Russell T. Schaffer, appellant, appeals from a judgment of the Circuit Court for Baltimore County, which affirmed a ruling of the Workers' Compensation Commission which held that the Subsequent Injury Fund ("SIF"), appellee, would not have to accelerate the commencement of its payments to Schaffer, notwithstanding the fact that his employer's payments had been accelerated pursuant to a lump sum settlement. For the reasons set forth herein, we will affirm the judgment of the circuit court.

## Background

The origins of the Subsequent Injury Fund were described by the Court of Appeals as follows in *Carey v. Chessie*

*Computer Servs., Inc.*, 369 Md. 741, 743–44, 802 A.2d 1060 (2002):

> In an effort to . . . encourage employers to hire persons with existing disabilities, the Legislature, in 1963, created a balanced mechanism to provide fair compensation to the subsequently injured employee and yet limit the liability of the employer. In what is now Maryland Code, § 9–802(a) of the Labor and Employment Article (LE), the General Assembly directed, in relevant part, that if an employee, already having a permanent impairment, suffers a subsequent occupational injury that results in a permanent disability that is substantially greater, due to the combined effect of the previous impairment and the subsequent injury, than it would have been from the subsequent injury alone, the employer is liable only for the compensation payable for the subsequent injury.

*See* Maryland Code (1991, 2008 Repl.Vol.), Labor and Employment Article ("LE"), § 9–801, *et seq.*, and § 10–201, *et seq.*

As the Court of Appeals observed in *Subsequent Injury Fund v. Teneyck*, 317 Md. 626, 632, 566 A.2d 94 (1989), the legislature's intent—as expressed in LE § 9–801—in creating the SIF was to provide full compensation for an injury to an employee who already had a permanent impairment at the time of suffering another accidental injury. Section 9–801 states:

> When a covered employee has a permanent impairment, suffers a subsequent accidental personal injury, occupational disease, or compensable hernia resulting in permanent partial or permanent total disability, and otherwise meets the requirements of this subtitle, it is the intent of this subtitle that the total compensation to which the covered employee is entitled equal the amount of compensation that would be payable for the combined effects of:
>
> (1) the previous impairment; and
>
> (2) the subsequent accidental personal injury, occupational disease, or compensable hernia.

The Court of Appeals observed in the *Teneyck* case that the statutory scheme of compensation in such cases provides:

[T]he employer pays for the second injury and the Fund pays for "the balance of the total award, so that the sum of the two payments [will] equal the compensation provided by statute for the combined effects of both the previous disability and the subsequent injury."

317 Md. at 636, 566 A.2d 94 (second alteration in original) (quoting *Subsequent Injury Fund v. Pack*, 250 Md. 306, 308, 242 A.2d 506 (1968)).

Turning to the facts which gave rise to the present controversy, Robert Schaffer had pre-existing conditions at the time he was employed by Town & Country Driving School. On December 15, 2006, Schaffer was involved in a serious automobile accident during the course of his employment by Town & Country. Schaffer filed a claim for workers' compensation, and because, prior to the accident, he had conditions that were not related to his employment, he sought part of his compensation from the Subsequent Injury Fund.

In early October 2008, before the Workers' Compensation Commission held a hearing on the claim, Schaffer entered into a settlement agreement with his employer, or its insurer, to accept a lump sum payment of $91,025.00 in satisfaction of the employer's share of compensation. Pursuant to LE § 9–722(a), such settlements must be approved by the Commission. On October 8, 2008, the Commission issued an order approving that settlement, and a lump sum payment was made to Schaffer.

The Commission proceeded with a hearing to apportion liability for Schaffer's disability. The Commission found that Schaffer was permanently and totally disabled. The Commission further determined that 55% of Schaffer's disability resulted from the December 15, 2006, accident (when he was employed by Town & Country), and the remaining 45% of Schaffer's disability was attributable to Schaffer's pre-existing conditions. Had there been no lump sum settlement between Schaffer and the employer's insurer, this award would have

obligated the employer to pay its portion of the award at the rate of $339 per week, over a period of 367 weeks, commencing on June 18, 2008, and ending in June 2015. On April 13, 2009, the Commission issued an order indicating that the SIF was required to make weekly permanent total disability payments to Schaffer at the rate of $339 per week, commencing on October 9, 2009.

The SIF objected to the commencement date for its payments, and filed a motion for a rehearing. Because benefits from the SIF are to be paid after payment of the employer's share, it was the SIF's position that its payments should not commence until the date the employer's weekly payments would have ended had there been no lump sum settlement with the employer: *i.e.,* June 2015. If the SIF's weekly payments were accelerated to commence on October 9, 2009, then the SIF would be obligated to pay for an additional seven years of benefits for the sole reason that Schaffer had entered into a settlement agreement to which SIF was not a party.

On September 30, 2009, the Commission held the rehearing. At that hearing, the SIF made the following arguments regarding the April 2009 order that had been issued by the Commission:

[COUNSEL FOR THE SIF]: ... [Y]our order asked that we begin paying immediately on our portion of the payments instead of waiting until the payments would have begun had 55 percent been paid by the employer and insurer.

It's always been the Fund's position that these payments are consecutive not concurrent. That we pay at the end of the payments to be made by the employer and insurer.... And if the Subsequent Injury Fund were to be ordered to pay immediately, it has the effect of Mr. Schaffer collecting from both the employer and the Fund at the same time. It's really—that makes overlapping payments because he did settle the case for $92,000.

The following exchange occurred among the Commissioner, counsel for Schaffer, and counsel for the SIF:

THE COMMISSION: There is dicta in a case [which] **basically says that the Subsequent Injury Fund should not be paying anything that would be the employer and insurer's obligation. I have to weigh that in because the employer and insurer's obligation would have been to pay until whatever the 55 percent less your expenses and attorney's fees would have been paid.** Even with giving the benefit of the doubt to the claimant, it's a real close call given that benefit of the doubt.

[COUNSEL FOR MR. SCHAFFER]: Well, we would simply argue, you know, that what that does when IWIF settles, it has no—Subsequent Injury Fund has no immediate bearing on that. They can't control that. And it's his prerogative to settle the case.

THE COMMISSION: Of course, but then what that does is that advances the time that the SIF would be required to pay substantially and takes them out of the equation of having any control over their liability.

[COUNSEL FOR THE SIF]: Which could really have poor precedent where we are concerned because claimants can elect to settle cases, get their lump sum money from an employer and insurer under an award and then we would just be paying right away if [counsel for Mr. Schaffer's] scenario is followed in many, many, many cases and I think that goes against the statutory—

[COUNSEL FOR MR. SCHAFFER]: It is against the pure statutory language that says you pay upon completion, not hypothetical completion, of the payments. If the legislature intended it to be the hypothetical completion date, they could have so stated. . . .

THE COMMISSION: It is a tough call here.

The Commission issued a modified order, dated October 9, 2009, which required the SIF to begin making payments (in the same weekly benefit amount as previously ordered) on June 23, 2015—the date requested by the SIF—which would have been the date the employer's share of benefits would

have been fully paid if they had been paid weekly instead of being paid in a discounted lump sum.

Schaffer filed a petition in the Circuit Court for Baltimore County, seeking judicial review of the Commission's order of October 9, 2009. The SIF filed a cross-petition for judicial review regarding the same October 9, 2009, order.

Schaffer filed a motion for summary judgment, and the SIF filed a cross-motion for summary judgment. On April 22, 2011, the circuit court held a hearing on the motions, and the circuit court judge provided the following comments in support of her ruling in favor of the SIF, affirming the order of the Commission:

[THE COURT:] The issue before the Court is the effective date of S.I.F. or the Subsequent Injury Fund's obligation to begin payments to Mr. Schaffer.

There was a hearing before ... the Commission, on this issue, and the Workers' Compensation Commission determined that the effective date of S.I.F.'s payments was June 23rd, 2015.

The Claimant has entered into a lump sum settlement with the employer in this case, but his case is based on a statutory scheme. The employer/insurer is responsible for the initial payments, and it is only after that obligation and those payments have concluded that the S.I.F. is responsible.

Now, I understand the argument, well, the lump sum payment has been made so, therefore, S.I.F. should begin making payments. But when you look at the scheme, the statutory scheme, it does not make sense to apply the statute the way that Claimant's counsel has argued. It's a good argument, but the Court doesn't find that it is the correct interpretation of the statute.

The fact that the Claimant has settled with the employer should not affect the effective date of the Subsequent Injury Fund's obligation.

What happens if you interpret the statute the way counsel for the Claimant is arguing, you do accelerate the obligation

of the Subsequent Injury Fund, you increase Subsequent Injury Fund's liability, and most importantly, you increase the annual payment, if you will, of $17,628, and that is significant, as [counsel for the SIF] pointed out, and it is fixed and designed to make the Claimant whole. The Claimant would have a windfall if the Court were to interpret and apply the statute as Claimant's counsel suggests.

I also do give deference to the Commission's interpretation to the statute and series of statutes that it regularly applies and interprets, and while if there is legal error, then clearly the Court would make a different decision. I don't find that there has been, and under the circumstances since this is a legal issue, the Court is denying the Claimant's Motion for Summary Judgment; however, I am granting the motion filed by the Subsequent Injury Fund.

This appeal followed.

## DISCUSSION

The parties agree that there are no facts in dispute in this case. Consequently, the case presents a question of law, which this Court reviews *de novo*. *Doe v. Buccini Pollin Group, Inc.*, 201 Md.App. 409, 420, 29 A.3d 999 (2011) (citing *Granite State Ins. Co. v. Hernandez*, 191 Md.App. 548, 558, 992 A.2d 528 (2010)).

The language of LE § 9–802(c) states: "Compensation from the Subsequent Injury Fund shall be paid **after the completion of payments** of compensation by the employer or its insurer." (Emphasis added.) Further, LE § 9–804(a)(3) provides that, "[i]n an award against the Subsequent Injury Fund, the Commission shall find specifically ... the date when the Subsequent Injury Fund shall begin payments."

Schaffer contends that, because he settled with his employer for a lump sum payment, the Commission could have, and, pursuant to LE § 9–802(c) should have, ordered the SIF to begin making payments 30 days after October 8, 2008, which

is the day that the Commission approved the settlement with the employer.[1]

The SIF contends that interpreting the statute in such a manner "would result in a costly expansion of the Subsequent Injury Fund's liability far beyond what was intended by the General Assembly, all due to a settlement to which the [SIF] was not a party." According to the SIF:

Allowing a claimant to accelerate benefit payments in this way would set a troubling example that would invite further abuse by creating an incentive to make unreasonable settlements with steep discounts, in the hope of shifting the financial burden from the employer to the Subsequent Injury Fund. Such an outcome is not supported by the statute, case law, or common sense, which all require that the payments from the employer and the Fund be consecutive and not concurrent.

In *Subsequent Injury Fund v. Kraus*, 301 Md. 111, 115, 482 A.2d 468 (1984), the Court of Appeals rejected an argument that payments made by the SIF and the employer should be concurrent, and concluded that such a result is contrary to the plain language of the predecessor of LE § 9–802(c). Nevertheless, although the plain language of LE § 9–802(c) states that the payments made by the SIF "shall be paid after the completion of payments of compensation by the employer or its insurer," the statute does not specify one way or the other whether the payments made by the SIF should begin immediately after the payment of an agreed lump sum settlement of the employer's obligation, or should begin at the time that they would have otherwise begun had there been no settlement of the obligation of the employer. Accordingly, there is an ambiguity in the language of the statute regarding when the SIF's payments should commence under these circumstances.[2]

---

1. It is unclear where Schaffer derives the "(30) days after" language. Before the circuit court, Schaffer requested that the SIF be compelled to commence payments on November 12, 2008.

2. Although LE § 9–802(c) refers to "the completion of payments," (emphasis added) in the plural, Maryland Code (1957, 2011 Repl.Vol.),

The pertinent principles of statutory interpretation, as summarized by the Court of Appeals in *Kaczorowski v. Baltimore,* 309 Md. 505, 525 A.2d 628 (1987), indicate:

"[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment. *State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975); *Height v. State,* 225 Md. 251, 170 A.2d 212 (1961). In such circumstances, the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense."

*Id.* at 513, 525 A.2d 628 (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986)).

The general compensation scheme for workers' compensation benefits focuses on weekly payments. *See Porter v. Bayliner Marine Corp.,* 349 Md. 609, 617–18, 709 A.2d 1205 (1998) ("By requiring Commission approval for the conversion of periodic payments to partial or total lump sum payments, it makes clear that the preferred method of paying awards is by periodic payment rather than by lump sum."). When the SIF is ordered to pay benefits, the Commission similarly focuses on weekly payments. In *Teneyck, supra,* 317 Md. at 633, 566 A.2d 94, the Court of Appeals analyzed the interplay between LE Title 9, Subtitle 6 ("Benefits") and Title 9, Subtitle 8 ("Subsequent Injuries") [3] The Court stated:

[T]here are no provisions in [Subtitle 8] by which to determine the amount, manner, or method of paying benefits for ... awards made against the Fund; these matters can be determined only by reference to the provisions of [Subtitle

---

Article 1 § 8 provides that, as a general principle of statutory construction: "The singular always includes the plural, and vice versa, except where such construction would be unreasonable."

**3.** At the time of the *Teneyck* case, the comparable provisions were codified in Article 101 § 36, and Article 101 § 66, respectively.

6], and the schedules therein contained, setting forth the formula to be followed in calculating the amount of awards due injured employees. . . .

*Id.* (quoting *Subsequent Injury Fund v. Chapman*, 11 Md. App. 369, 375, 274 A.2d 870, *aff'd per curiam*, 262 Md. 367, 277 A.2d 444 (1971), *superseded by statute as stated in Ferretto v. Subsequent Injury Fund*, 53 Md.App. 514, 520, 454 A.2d 866 (1983)); *see also Ball v. University of Maryland*, 137 Md.App. 229, 236, 768 A.2d 105 (2001) ("We do not interpret Subtitles 6 and 8 so as to exclude consideration of one other. Instead, they are to be read together as they are subdivisions of the same Title.").

Compensation under Subtitle 6 is described by reference to weekly wages, and the weekly benefits are payable for a certain number of weeks, proportionate to the severity of the injury. *See, e.g.,* LE § 9–637 (setting out how payments made by employers are calculated in permanent total disability cases).

In order for the SIF to be considered as a source of compensation, the conditions found in LE § 9–802(b) must be met.[4] When these requirements are met, the number of weeks and amount of payment to be made by the employer,

---

**4.** LE § 9–802(b) states:

(1) the covered employee has a permanent impairment due to a previous accident, disease, or congenital condition that is or is likely to be a hindrance or obstacle to the employment of the covered employee;

(2) the covered employee suffers a subsequent compensable accidental personal injury, occupational disease, or compensable hernia resulting in permanent partial or permanent total disability that is substantially greater due to the combined effects of the previous impairment and the subsequent compensable event than it would have been from the subsequent compensable event alone;

(3) the combined effects of the previous impairment and the subsequent accidental personal injury, occupational disease, or compensable hernia result in a permanent disability exceeding 50% of the body as a whole; and

(4) the previous impairment, as determined by the Commission at the time of the subsequent compensable event, and the subsequent accidental personal injury, occupational disease, or compensable hernia are each compensable for at least 125 weeks.

for its proportionate share of the total disability, is calculated by applying the schedules found in Subtitle 6, and treating the subsequent injury as if it were the only compensable disability of the employee. *McKenzie v. C.C. Kottcamp & Sons, Inc.*, 311 Md. 54, 63, 532 A.2d 703 (1987); *Kraus, supra*, 301 Md. at 115–17, 482 A.2d 468; *Reliance Ins. Co. v. Watts*, 16 Md.App. 71, 73, 293 A.2d 836 (1972) ("The declared legislative policy that 'the employer or his insurance carrier shall be liable only for the compensation payable under this article *for such injury* ' ... requires the precise determination of the compensation payable for the [subsequent] injury. Such determination is the only authority to apportion which is implied in § 66(1).").

After payment is made by the employer for those weeks of liability, the SIF begins paying weekly compensation, for an indefinite number of weeks, for the remainder of the employee's life. LE § 9–637(b); *see also Waters v. Pleasant Manor Nursing Home*, 361 Md. 82, 88, 105, 760 A.2d 663 (2000) (noting the effects of the 1973 amendment, which extended benefit payments beyond the previous $45,000.00 cap).[5]

Although the Maryland appellate courts have not specifically addressed the question of whether the date for commencement of the SIF's payments can be altered by a prepayment of the employer's obligations, the courts have commented on the interplay between the legislative policy that workers' compensation benefits should be interpreted liberally in favor of the employee and the apportionment of liability under LE § 9–801, *et seq.* The Court of Appeals has stated: "[T]he Workmen's Compensation Act is to be liberally construed in favor of injured employees. But this does not mean that the

---

5. The obligation of the SIF to make weekly payments terminates upon the death of the employee because there are no survivors' rights to payments made by the SIF. *See* LE § 9–640(a), which provides for survivors' benefits in permanent total disability cases, but explicitly states: "This section does not apply to compensation paid under Title 10, Subtitle 2 of this article." Title 10, Subtitle 2, of the Labor and Employment Article relates solely to the SIF. *Cf.* LE § 9–722(e), which provides for a survival of the right to receive payments due "under a final compromise and settlement agreement."

Act should be construed to provide for compensation beyond that authorized by its provisions and purpose." *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 635, 342 A.2d 671 (1975) (internal citation omitted)(holding that the SIF is not responsible when there is no "causal relationship between the subsequent injury and the deterioration of the pre-existing disease").

In addition, this Court has referred to the policy which led to the creation of the SIF as being a legislative effort to "persuade the employer to employ the handicapped individual by limiting the liability." *Dent v. Cahill,* 18 Md.App. 117, 128, 305 A.2d 233 (1973) (quoting *Watts, supra,* 16 Md.App. at 74, 293 A.2d 836). We further stated in *Dent:*

> There is **nothing,** however, in the legislative policy as quoted above in *Reliance Insurance Co. v. Watts, supra,* or in *Subsequent Injury Fund v. Rinehart,* 12 Md.App. 649, 280 A.2d 298 (1971)[,] that directly or indirectly **suggests that the Fund shall bear more than its lawful proportionate share** of disability suffered by an injured employee. Neither the social nor economic policy of § 66(1) requires shifting to the Fund any portion of the employer's obligation. The employer is required to pay no more than that portion of the disability attributable to the additional accidental injury, *Subsequent Injury Fund v. Rinehart, supra,* and he is obligated to pay no less.

*Id.* at 129, 305 A.2d 233 (emphasis added).

Here, there is no dispute that, if Schaffer had not entered into a lump sum settlement with the employer, the SIF would not have been required to begin making payments until June 23, 2015.[6] Schaffer urges that the SIF should have been ordered by the Commission to begin payments 30 days after the date the Commission approved his settlement with the employer in October 2008. If his position were adopted, then

---

**6.** We accept, for purposes of our discussion, the Commission's calculation of this date as the time that, had there not been a lump sum settlement, the periodic payments of the employer would have ceased, and the SIF payments would have begun.

the period during which the SIF was required to make weekly payments would be expanded to cover the weeks from November 2008 through June 23, 2015, which would result in Schaffer receiving an additional six years and seven months of payments. This would increase the potential liability of the SIF by the approximate amount of $117,000.

We conclude that the statutory scheme under Title 9, Subtitle 8, which calls for the apportionment of liability between the SIF and the employer, and provides for the SIF''s payments to be made after the conclusion of the employer's payments, does not permit the employee to accelerate the commencement date for the SIF''s weekly payments by entering into a settlement agreement with the employer. If we were to rule otherwise, an employee could circumvent the statutory benefit computations, and reap a windfall by forcing the SIF to pay additional weeks of compensation.

We share the SIF''s concerns about the policy implications of Schaffer's proposed interpretation of LE 9–802(c)—that it "would invite further abuse by creating an incentive [for the employer and employee] to make unreasonable settlements with steep discounts, in the hope of shifting the financial burden from the employer to the Subsequent Injury Fund." By settling, the employee could increase his potential recovery beyond what the employee would have otherwise been entitled to receive under the statutory scheme, and the employer could reduce its liability below what it would have otherwise been obligated to pay under the statutory scheme.

We will not interpret the provision of LE § 9–802(c) in a way that would lead to such a result that is contrary to common sense. *Kaczorowski, supra,* 309 Md. at 513, 525 A.2d 628. As this Court noted in *Dent, supra,* 18 Md.App. at 129, 305 A.2d 233, the policies underlying the creation of the SIF do not support a shifting of the employer's portion of liability to the SIF, resulting in the SIF bearing more than its lawful proportionate share. *See Del Marr v. Montgomery County,* 397 Md. 308, 320, 916 A.2d 1002 (2007) ("Absent some clearer expression of legislative intent, we are not willing to balkanize

the Workers' Compensation Law by creating special pigeon-holes with different rules."). Accordingly, we reject Schaffer's contention that the Commission committed an error of law, and we affirm the decision of the circuit court.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**